**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-CR-329 (RBW)** |
| **NIAM GEORGE PANNELL,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE**

The United States of America, by and through undersigned counsel, respectfully submits this Memorandum in Opposition to Defendant Niam George Pannell's Motion to Suppress Tangible Evidence. The defendant challenges the search of his residence, which was executed pursuant to a lawfully issued warrant. This is not an easy task. The affidavit in support of a search warrant enjoys "a presumption of validity," *Franks v. Delaware*, 438 U.S. 154, 171 (1978), and "[s]o long as the [police] relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule," *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (citing *United States v. Leon,* 468 U.S. 897, 922–23 (1984)). To succeed in challenging the search warrant, the defendant must establish infirmities in the warrant's affidavit so serious as to fall within *Leon*'s narrow exceptions to the good-faith doctrine. He fails to do so.

First, the defendant asserts that the affidavit contained false and misleading allegations about where he was living after the shooting. These claims fall squarely under *Franks*, but the defendant fails to sufficiently articulate any *Franks* violation. He fails to cite *Franks* or its D.C. Circuit progeny; fails to acknowledge the legal standard; fails to make the required offer of proof; fails to make *any* showing, much less the "substantial preliminary showing" necessary to obtain an evidentiary hearing; and fails to develop and brief his arguments. These arguments are waived.

Next, the defendant argues that the affidavit was facially lacking in probable cause. But to overcome good faith, the defendant must argue that the "affidavit [was] so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted). He fails to do so. The defendant argues that the affidavit fails to establish a nexus between his alleged criminal activity (a December 26, 2023, shooting in Alexandria, Virginia) and his residence, but he ignores key statements in the affidavit that tied him to the residence and explained why a gun was likely to be found there. He also argues that the information in the affidavit was stale, but he relies on inapposite precedent involving cases that dealt with longer delays and different types of evidence (i.e., drugs and classified documents). "[D]ifferent kinds of information go stale at different rates," *United States v. Johnson*, 437 F.3d 69, 72 (D.C. Cir. 2006), and the defendant cites no authority in which a court considered staleness in the context of a firearms search. The government has cited several, all of which recognize that firearms are durable goods that are kept for long periods of time. In sum, the defendant fails to establish that the affidavit is lacking in probable cause at all, much less so lacking in probable cause that it would render official belief in the warrant's existence unreasonable.

For reasons that follow, this Court should deny the motion without a hearing.

## FACTUAL BACKGROUND

The Alexandria Police Department (APD) has been investigating a shooting that the defendant allegedly committed on the morning of December 26, 2023. After determining that the defendant resided at his mother's home at 5825 Dix Street Northeast, in Washington, D.C. (the "Dix Street Address"), APD Detective John Brattelli sought a search warrant for that residence. On March 5, 2024, Metropolitan Police Department (MPD) Investigator Daniel Tipps applied for a search warrant on Detective Brattelli's behalf, and Superior Court Judge Ronna Lee Beck issued

the warrant. *See* Warrant No. 24 CSWSLD 987 (D.C. Super. Ct. Mar. 5, 2024) (attached as **Exhibit A**). The affidavit in support of that warrant sets forth the following facts:

On December 26, 2023, at approximately 6:49 a.m., members of the Alexandria Police Department were dispatched to 375 S. Reynolds Street, Apartment 312, in Alexandria, Virginia, for the report of a shooting. *See* Affidavit ¶ 8. Officer Honaker made his way to the apartment and encountered the victim. *See id.* The tip of the victim's left ring finger appeared to be missing, and he was using a cellphone charging cable as a makeshift tourniquet. *See id.* ¶ 9. The victim's initial account was "a bit erratic," but he described getting into an altercation with another man, who had jumped on him and started waving a gun. *Id.* The victim said he wrestled with the man to disarm him, and the gun went off. *See id.*

The officer continued interviewing the victim as he received medical treatment. *See id.* ¶ 10. The victim initially provided a false name, but when pressed provided his actual name. *See id.* (The victim had a non-extraditable warrant from New York and a warrant for felony failure to appear from Fairfax Count, Virginia. *See id.* ¶¶ 10, 12). The victim said he was in an apartment with only a few other people, including his friend, the suspect, and the suspect's girlfriend. *See id.* ¶ 11. The victim provided the suspect's girlfriend's name and said the suspect was named "Naheem." *Id.* According to the victim, "Naheem" came up behind him and pointed a gun at his head. *See id.* As the victim attempted to wrestle the gun away, it went off, and "Naheem" fled the apartment. *See id.*

Detective Brattelli reviewed surveillance footage from the apartment building, which showed that, immediately after the shooting, a skinny Black male with a firearm in his hand was in the stairwell. *See id.* ¶ 13. Detective Brattelli then researched multiple law enforcement databases, searching for the name of the defendant's girlfriend and "Naheem." *See id.* ¶ 14. Based

3

on that search, he found a photo of the defendant.  *See id.*  (In this paragraph, the defendant is referred to as "Nahim Pannel," an apparent misspelling of his name, but his date of birth is accurate.)  On December 28, 2023, Detective Gardizi (who did not know the identity of the suspect) conducted a photo spread identification procedure.  *See id.*  The victim immediately identified the defendant.  *See id.*

Detective Brattelli conducted surveillance outside the Dix Street Address (the defendant's mother's residence), between 10:00 a.m. and 2:00 p.m. on February 6, 13, and 15, 2024.  *See id.* ¶ 16.  On each of those days, Detective Brattelli observed an individual who appeared to be the defendant leaving and entering the residence multiple times.  *See id.*  Detective Brattelli had also researched law enforcement databases and identified a phone number associated with the defendant.  *See id.*  On February 6, 2024, Investigator Gallaher called the number, and the person who answered the phone identified himself as the defendant.  *See id.*  APD subsequently obtained a search warrant for historical and real-time cell site location information for that phone number. *See id.*  A review of the historical and real-time location information[1] placed the defendant "at his mother's residence almost every night since the day of the offense."  *Id.*

* * *

On March 13, 2024, at approximately 7:21 a.m., APD and MPD members executed the search warrant at 5825 Dix Street Northeast.  Two juvenile females, two adult females, and two adult males were present in the home.  The defendant was observed walking out of his bedroom

---

[1] APD provided the historical cell site location records to the government by email on Thursday, October 10, 2024, at 10:13 a.m., and the government forwarded them to the defendant's counsel at 10:17 a.m.  The records were generated by T-Mobile on February 13, 2024, and contain historical location data beginning on December 26, 2023, and ending on February 13, 2024.  The government is working to obtain the real-time location information from APD and will produce it to the defendant's counsel upon receipt.

on the residence's second floor.  The police searched the defendant's bedroom and recovered his D.C. identification card, mail matter in his name, an unloaded Taurus G2C 9-millimeter semiautomatic handgun bearing serial number ACK371444, an unloaded firearm magazine, a fully loaded firearm magazine containing 12 rounds of 9-millimeter ammunition, 16 loose rounds of 9-millimeter ammunition, a box containing 16 rounds of 9-millimeter ammunition, and a box containing 30 rounds of .38 caliber ammunition.

DNA swabs from the firearm and the defendant were submitted to the FBI Laboratory for testing and analysis.  The FBI Laboratory obtained a DNA profile from the firearm that contained male and female DNA interpreted as originating from three individuals.  The DNA results from the firearm are 2.0 septillion times more likely if the defendant and two unknown, unrelated people are contributors than if three unknown, unrelated people are contributors.

## PROCEDURAL HISTORY

On March 13, 2024, MPD arrested the defendant on firearms charges after finding the firearm and ammunition in his bedroom.  On March 14, 2024, the United States Attorney's Office charged the defendant in Superior Court by criminal complaint with one count of unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 22 D.C. Code § 4503(a)(1).  *See United States v. Pannell*, No. 2024 CF2 002479 (D.C. Super. Ct).  On March 15, 2024, the defendant appeared for a preliminary hearing.  The defendant waived his preliminary hearing.  He was released onto GPS-location monitoring, but the monitor went dead on March 23, 2024, and the defendant was in fugitive status.

On July 17, 2024, a federal grand jury returned a one-count indictment charging the defendant with unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

(ECF No. 1).  On September 17, 2024, the defendant was arrested, made his initial appearance before this Court, and consented to pretrial detention.  On September 20, 2024, the government dismissed the Superior Court case.

On September 30, 2024, the parties appeared before this Court for a Status Conference and scheduled a jury trial for November 18, 2024.  On October 4, 2024, the defendant filed a Motion to Suppress Tangible Evidence and attached the search warrant as an exhibit thereto.  (ECF Nos. 10, 11).  The government now respectfully submits this Memorandum in Opposition.

## LEGAL STANDARDS

The Fourth Amendment proscribes "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.   A showing of probable cause "is not a high bar."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).  In the search warrant context, a showing of probable cause requires only a "fair probability that . . . evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  An application for a search warrant "must demonstrate cause to believe that 'evidence is likely to be found at the place to be searched.'"  *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017) (quoting *Groh v. Ramirez*, 540 U.S. 551, 568 (2004)).   In addition, there must be "a nexus . . . between the item to be seized and criminal behavior."  *Id.* (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)).

When a search warrant is challenged, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis . . . for conclud[ing]' that probable cause existed."  *Gates*, 462 U.S. at 238–39 (omission and alteration in original) (quoting *Jones v. United States*,

362 U.S. 257, 271 (1960)).  "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  The Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review," because "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

While the Supreme Court has applied the exclusionary rule for certain Fourth Amendment violations, it has also stated that "the Fourth Amendment 'has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons.'"  *United States v. Leon,* 468 U.S. 897, 906 (1984) (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)). "The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern," and "[p]articularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system."  *Id.* at 907–08; *see also Davis v. United States*, 564 U.S. 229, 237 (2011) (noting that the exclusionary rule's "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment," and that the Supreme Court's "cases hold that society must swallow this bitter pill when necessary, but only as a 'last resort.'" (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006))).

"Those principles carry particular force when, as here, the police obtained a warrant before executing a search."  *United States v. Spencer*, 530 F.3d 1003, 1006 (D.C. Cir. 2008).  "So long as the officer relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule."  *Id.* at 1006–07 (citing *Leon*, 468 U.S. at 922–23). "When

officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon*, 468 U.S. at 924.

Leon sets forth "a few narrow exceptions" to the good-faith doctrine. *Spencer,* 530 F.3d at 1007. "Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless regard for the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also United States v. Glover*, 681 F.3d 411, 419 (D.C. Cir. 2012) ("For an omission to meet the *Franks* standard, the officer must at least have knowingly and intentionally (or with reckless disregard) omitted a fact that would have defeated probable cause."). "Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks and citation omitted).

## **ARGUMENT**

The defendant has failed to identify any legitimate deficiency in the affidavit supporting the search warrant for the Dix Street Address. In any event, because the police relied on the warrant issued by Judge Beck in objective good faith, this Court "may not apply the exclusionary rule." *See Spencer*, 530 F.3d at 1006–07 (citing *Leon*, 468 U.S. at 922–23). To get around the good-faith exception to the exclusionary rule, the defendant argues that the affidavit in support of the warrant **(i)** contained false and misleading information and **(ii)** was facially lacking in probable cause.

As a threshold matter, the bulk of the defendant's arguments have been insufficiently articulated and are waived. As set forth below, the defendant hints at alleged *Franks* violations, but he never briefs those claims. He fails to cite any of the controlling case law, making no mention of *Franks* or any of its D.C. Circuit progeny. Nor does he engage the legal standard that governs

such claims.  And it is unclear if his argument that the affidavit facially lacks probable cause is distinct from his unbriefed *Franks* claims, as it appears premised on the assumption that certain statements will be excised from the affidavit.

To the extent this Court entertains the defendant's undeveloped arguments, they are meritless and should be rejected without a hearing.

## I.    Most of the Defendant's Arguments Are Insufficiently Developed and Waived.

Most of the defendant's arguments concerning the integrity of the search warrant affidavit have been insufficiently developed and are waived.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . [A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).  In this District, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."  *See Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013); *accord United States v. Wright*, 233 F. Supp. 3d 165, 169 n.5 (D.D.C. 2017) (Contreras, J.) (citing *Johnson*'s waiver standard where criminal defendant made factual allegations in suppression motion but failed to "explain their relevance to any legal theory"); *United States v. Nordean*, No. 21-CR-175, 2022 WL 2375810, at *2 n.2 (D.D.C. June 20, 2022) (Kelly, J.) (citing *Johnson*'s waiver standard where criminal defendant failed to argue due process claims).

The defendant intimates that there have been *Franks* violations but never fleshes out those arguments.  He nowhere cites *Franks* or any of the binding precedent applying it in this Circuit. He does not acknowledge the legal standard for a *Franks* violation, let alone consider its application here.  Similarly, the defendant has not coherently articulated his argument that the affidavit facially lacked probable cause because it failed to establish a nexus between the

Alexandria shooting and the Dix Street Address. (That argument appears to be premised on the faulty assumption that the allegations the defendant has contested will be excised from the affidavit—something that would happen only if the defendant made the "substantial preliminary showing" necessary to obtain a *Franks* hearing ***and*** prevailed at that hearing.)

While the government has attempted to divine the defendant's claims and respond on the merits, it is neither the government's nor the Court's obligation to make the defendant's arguments for him. *See Schneider*, 412 F.3d at 200 n.1. The bulk of the defendant's arguments are waived.

## II. The Defendant Asserts that the Affidavit Contained Misleading Information and Omitted Material Facts, But He Does Not Acknowledge the *Franks* Standard, Let Alone Make the "Substantial Preliminary Showing" Necessary to Obtain an Evidentiary Hearing.

The defendant does not contest that the affidavit established probable cause to believe he committed the December 26, 2023, shooting, or that the historical location records for his phone number placed him at the scene of the shooting. Rather, he takes issue with the allegation that the location records placed him at the Dix Street Address almost every night since the day of the offense. The defendant asserts that, "[u]pon information and belie[f], the location and historical records did not place [him] at [the Dix Street Address] on the night of the shooting or the days and weeks that followed, but the warrant affidavit failed to note these facts." (Def.'s Mot. at 2). He further asserts that "[t]he warrant not only falsely suggested that [he] was at that address immediately following the shooting, but failed to state that his residence at that time—as confirmed by Virginia DMV records and other government records known to police—was in Virginia, not the Dix Street address in D.C." (Def.'s Mot. at 2–3). According to the defendant, "[t]he omitted information would have clearly demonstrated the lack of a connection between the residence and the date of the shooting." (Def.'s Mot. at 3). And, as a throwaway line at the end of his brief, he makes the conclusory assertion that "at a minimum the officers were reckless for failing to include

[his] residence in Virginia and lack of contact with the Dix Street address in proximity to the firearm offense." (Def.'s Mot. at 7).

Claims that an affidavit is false and misleading fall squarely under *Franks*. But the defendant fails to engage any of the pertinent caselaw. To establish entitlement to an evidentiary hearing, he "must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir. 2010) (quoting *United States v. Richardson*, 861 F.2d 291, 293 (D.C. Cir. 1988) (per curiam) (citing in turn *Franks*, 438 U.S. at 155–56). The defendant must make a "substantial preliminary showing." *Franks*, 438 U.S. at 155, and "[t]o mandate an evidentiary hearing, [his] attack must be more than conclusory and must be supported by more than a mere desire to cross-examine," *id.* at 171. As the Supreme Court further explained in *Franks*:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171–72. Applying these principles here, the defendant has not come close to meeting his burden. His undeveloped *Franks* claims are meritless and do not entitle him to an evidentiary hearing, much less suppression.

As a threshold matter, the defendant must sufficiently demonstrate that the affidavit included false information or omitted material information. The defendant asserts "upon information and belief" that the cell site location data did not place him at his mother's residence on the night of the shooting or the days and weeks that followed. Assertions "upon information and belief" are insufficient to establish entitlement to a *Franks* hearing. *See United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987) (holding that an allegation "upon information of belief" was a "bald denial" that "does not call for a hearing," as "*Franks* held that the defendant bears a substantial burden to demonstrate probable falsity"); *United States v. Dennis*, No. 11-CR-0002, 2011 WL 3515903, at *9 (D.V.I. Aug. 11, 2011) (holding that a defendant's "information and belief is a fatally insufficient basis to merit a *Franks* hearing"); *United States v. Jefferson*, No. 09-CR-07, 2009 WL 4549189, at *4 (E.D. Wis. Nov. 27, 2009) (holding that an attorney's "'upon information and belief' assertions will almost always be insufficient to present the requisite substantial preliminary showing to warrant a *Franks* hearing"). Given that the defendant's challenge focuses on information that is uniquely within his control—where he himself was living—if the affidavit got it wrong, he should be able to offer much more than just his counsel's say-so.

The reality is that the challenged aspects of the affidavit were not false or misleading. The historical cell site location information shows that on the morning of December 26, 2023, leading up to the time of the shooting, the defendant's cellphone was connecting to T-Mobile towers in Alexandria near the crime scene.[2] For example, at 5:17 a.m. and 5:44 a.m., the defendant's

---

[2] The government has submitted these records to this Court's Courtroom Deputy via email. (**Exhibit B**). The records list the subscriber "Niam Pannell" (the defendant) and provides his address as 2100 Martin Luther King, Jr., Avenue Southeast, Suite 100, Washington, D.C. While this address was not mentioned in the affidavit, its inclusion would not have defeated probable cause because it is not a residence. Rather, it is the address for the Mayor's Office for Returning

cellphone connected to the tower at 6101 Edsall Road, which is 0.41 miles from the location of the shooting.[3]  At 7:19 a.m.—just over 30 minutes after APD was dispatched to the scene of the shooting—the defendant's cellphone connected to a tower located at 6801 Eads Road in Seat Pleasant, Maryland, which is 0.58 miles away from the Dix Street Address (and 12.91 miles from the crime scene).  The defendant's cellphone also connected numerous times that day to the tower at 6606 Baltic Street in Seat Pleasant, Maryland, which is 0.99 miles away from the Dix Street Address (and 13.53 miles from the crime scene).  In the days and weeks after the shooting, the defendant's cellphone routinely connected to these and other towers within approximately 1 mile of the Dix Street Address, including during the overnight hours.

The defendant also claims, again with no proof, that he "lived at an address in Virginia" following the shooting.  (Def.'s Mot. at 5).  The historical cell site location information, which spans from December 26, 2023, to February 13, 2024, tells a different story.  The data shows that the defendant's cellphone connected to towers in Virginia on only three days after the shooting: December 29, 2023, and January 24 and 25, 2024.  And while the affidavit did omit that certain government databases listed a Virginia address for the defendant, including that fact in the affidavit would not have defeated probable cause because the affidavit connected the defendant to the Dix Street Address.  Had the defendant's Virginia address been included in the affidavit, there would likely have been additional information provided demonstrating that the defendant no longer lived

---

Citizen Affairs, which helps previously incarcerated individuals reenter society.  It is not uncommon for previously incarcerated individuals to use this address.  The defendant previously served a six-year sentence for first-degree burglary, *see* case number 2011 CF3 003502 (D.C. Super. Ct. July 29, 2011), and a one-year sentence for attempted robbery, *see* case number 2009 CF3 008754 (D.C. Super. Ct. Dec. 1, 2009).

[3] The government calculated the straight-line (not driving) distance using this free online tool: https://www.mapdevelopers.com/distance_from_to.php

there, such as that APD **(i)** conducted surveillance outside that address but did not observe the defendant, and **(ii)** spoke to an individual in the leasing office, who said that the defendant had not lived at that address for months.

But even if the defendant could demonstrate that the affidavit was false and misleading, his conclusory assertion that "at a minimum the officers were reckless"—without any offer of proof—would be fatal to his claim.  *See United States v. Matthews*, 172 F. Supp. 3d 1, 6 (D.D.C. 2012) (Walton, J.) ("[T]he defendant has failed to make any offer of proof that [the affiant] omitted this information in a deliberate attempt to mislead the judge who issued the warrant. . . . [T]he defendant's failure to make an offer of proof regarding the affiant's intent to mislead or reckless disregard renders his request for a *Franks* hearing insufficient."), *aff'd*, 753 F.3d 1321, 1327 (D.C. Cir. 2014) ("Here, as in *Becton*, there is no more than a conclusory claim that the officer may have misled the issuing judge, and there is no support in the record for the necessity of holding an evidentiary hearing under *Franks*."); *United States v. Gaston*, 357 F.3d 77, 81 (D.C. Cir. 2004) (holding that "[t]he district court was surely right" to deny a *Franks* hearing where the defendant "made no offer of proof").

Because the defendant **(i)** fails to make any credible showing that the affidavit contained false statements or omitted material information and **(ii)** makes only the conclusory assertion that officers were "reckless," without any offer of proof, his attack on the affidavit's integrity fails. *See, e.g.*, *United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990) ("Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity.").

**III.    The Affidavit Was Not So Lacking in Indicia of Probable Cause as to Render Official Belief in Its Existence Entirely Unreasonable.**

The defendant asserts a second exception to *Leon*'s good-faith rule:  that the affidavit was facially lacking in probable cause.  His burden here is a heavy one, as the affidavit must be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S. at 923.  According to the defendant, the affidavit facially lacked probable cause in two respects:  it **(a)** failed to establish a nexus between the Alexandria shooting and the Dix Street Address, as it did not connect the defendant to the residence until February 2024, and did not connect the firearm used in the shooting to that address; and **(b)** was premised on stale information.   These arguments are meritless.

### A. The Affidavit Sufficiently Established a Nexus Between the Defendant's Criminal Activity and the Dix Street Address.

The defendant asserts that the affidavit fails to establish a nexus between the Alexandira shooting and the Dix Street Address.  He argues that "[t]he first date that the affidavit specifically placed [him] at the Dix Street location was more than a month after the shooting" and that "[w]hile the affidavit stated that [he] was identified as being at the Dix Street address more than a month after the shooting, it offered no explanation as to why a firearm would be found at that address." (Def.'s Mot. at 3).  He further argues that the affidavit "provided no connection between the firearm used in the shooting and the Dix Street address" and "alleged only that [he] was at that address more than a month after the alleged December 2023 incident and did not allege that [his] mother or anyone else who lived at the Dix Street address was implicated in the Virginia firearm offense." (Def.'s Mot. at 5).  The defendant misstates the affidavit's contents and misunderstands the law.

While it is true that Detective Brattelli first observed the defendant at the Dix Street Address during surveillance on February 6, 2024, the affidavit also alleges that the historical cell

site location data "place[d] [him] at his mother's residence almost every night since the day of the offense." Affidavit ¶ 16. (The defendant apparently assumes that this paragraph is excised from the affidavit merely because he has asserted that it is false, but the defendant would first need to establish entitlement to a *Franks* hearing and then prevail at the hearing.) The affidavit sufficiently established that the defendant resided at the Dix Street Address immediately following the shooting and in the days and weeks that followed. *See id.* ¶¶ 16, 17.

The affidavit also contains a statement that, in the affiant's experience, those who possess illegal firearms "routinely secrete contraband," such as guns, "at their residences." *Id.* ¶ 4.b. This statement is sufficient to establish nexus under D.C. Circuit law. *See United States v. Glay*, No. 08-CR-23, 2009 WL 1921405, at *3 (D.D.C. June 30, 2009) (Bates, J.) ("This Court, however, is required to apply the law of this Circuit, where the nexus may be established without an independent evidentiary basis—*i.e.*, the nexus may be established by an affiant's statement that her training and experience provides probable cause to believe that there is a nexus between criminal activity and the place to be searched." (citing *United States v. Thomas*, 989 F.2d 1252 (D.C. Cir. 1993), and *United States v. Johnson*, 437 F.3d 69, 71 (D.C. Cir. 2006))); *Thomas*, 989 F.2d at 1255 ("[O]bservations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence.").

Because the affidavit sufficiently established a nexus between the Alexandria shooting and the Dix Street Address, this argument fails.

**B. The Information in the Affidavit Was Not Stale.**

The defendant argues that "the warrant was issued 70 days after the shooting," [4] and that the affidavit "was stale and did not support the search." (Def.'s Mot. at 6). This argument fails.

In analyzing staleness, the D.C. Circuit has noted that

> [t]he likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc.

*United States v. Bruner*, 657 F.2d 1278, 1298 (D.C. Cir. 1981) (citation omitted); *United States v. Johnson*, 437 F.3d 69, 72 (D.C. Cir. 2006) ("[D]ifferent kinds of information go stale at different rates.").

Many of the *Bruner* factors weigh in favor of concluding that evidence of the Alexandria shooting—namely, firearms evidence—would be found at the Dix Street Address. While the shooting was a single incident, the affidavit established that the defendant consistently resided at the Dix Street Address following the shooting. And the thing to be seized—a firearm—is an expensive, durable object that is of lasting utility to its owner.[5] *See, e.g.*, *United States v. Ponzo*, 853 F.3d 558, 573 (1st Cir. 2017) (holding that information that defendant had visited firing range

---

[4] While the shooting occurred on December 26, 2023, information connecting the defendant to the Dix Street Address was not developed until February 13, 2024, when T-Mobile produced historical cell site location information to APD. The warrant was obtained 21 days after T-Mobile provided this information. The D.C. Circuit has held that "although the time between the application for a warrant and the discovery of the evidence supporting that application is 'not controlling,' it is nonetheless important." *United States v. Webb*, 255 F.3d 890, 904 (D.C. Cir. 2001).

[5] While an individual could dispose of a firearm after a shooting, in assessing staleness, the Court is not required "to presume that perpetrators always (or usually) take logical steps to avoid detection" or to "assume an individual believed to be involved in illegal activity is necessarily a rational actor." *See United States v. Burroughs*, 905 F. Supp. 2d 297, 305 (D.D.C. 2012) (Kollar-Kotelly, J.).

four months earlier was not stale because "firearms, unlike drugs, are durable goods useful to their owners for long periods of time" (quoting *United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991))); *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008) ("Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time."); *Singer*, 943 F.2d at 763 (holding that six-month-old info about a firearm was not "stale"); *United States v. Batchelder*, 824 F.2d 563, 564–65 (7th Cir. 1987) (holding that nine-month-old information that defendant purchased illegal silencer parts for pistol was not stale); *United States v. Comstock*, 412 F. App'x 619, 623 (4th Cir. 2011) ("Thus, we are persuaded to hold that it was reasonable for the magistrate to believe that such evidence of gun possession would be found at Defendant's residence, notwithstanding the passage of [eleven weeks'] time.")

The defendant's reliance on *United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001), and *Schoeneman v. United States*, 317 F.2d 173, 177 (D.C. Cir. 1963), is misplaced. Those cases involved older information about different types of evidence—109-day-old information about drugs in *Webb* and 107-day-old information about classified documents in *Schoeneman*. Neither case involved "firearms, [which] unlike drugs, are durable goods useful to their owners for long periods of time." *Ponzo*, 853 F.3d at 573.

The defendant offers no authority for the proposition that a warrant application seeking firearms evidence, made 70 days after a shooting and 21 days after confirmation of the defendant's connection to the residence, is stale. This argument should likewise be rejected.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the defendant has not established his entitlement to an evidentiary hearing, much less suppression. This Court should summarily deny his Motion.

18

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

Dated: October 14, 2024          By:     */s/ Paul V. Courtney*
                                         Paul V. Courtney
                                         D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                                         Kyle M. McWaters
                                         D.C. Bar No. 241625
                                         Assistant United States Attorneys
                                         United States Attorney's Office
                                         for the District of Columbia
                                         601 D Street NW
                                         Washington, D.C. 20530
                                         (202) 252-1719 (Courtney)
                                         (202) 252-6983 (McWaters)
                                         Paul.Courtney@usdoj.gov
                                         Kyle.McWaters@usdoj.gov