UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NIAM GEORGE PANNELL,<br><br>Defendant. | Case No. 24-CR-329 (RBW) |

### GOVERNMENT'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE

The United States of America, by and through undersigned counsel, respectfully submits this Sur-Reply in Further Opposition to Defendant Niam George Pannell's Motion to Suppress Tangible Evidence. The question before the Court is not whether the search warrant affidavit contains disputed facts, but whether the defendant can make a "substantial preliminary showing," supported by "an offer of proof," that **(i)** the affidavit contained information the affiant knew was false or would have known was false but for his reckless disregard for the truth, and **(ii)** the allegedly false statements were necessary to the finding of probable cause. *See United States v. Leon*, 468 U.S. 892, 923 (1984); *Franks v. Delaware*, 438 U.S. 154, 155–56, 171 (1978). In other words, to overcome the affidavit's presumption of validity, the defendant must bring forth evidence and make a substantial showing that the affiant misled the judge. The defendant has not come close to doing so. For reasons that follow, his Motion should be summarily denied.

### RELEVANT LEGAL PRINCIPLES

In *Franks*, the Supreme Court recognized that "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. To mandate an evidentiary hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included

by the affiant in the warrant affidavit" and that the "allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56. The attack on the warrant "must be more than conclusory." *Id.* at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* "They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

## ARGUMENT

I. **THE DEFENDANT'S *FRANKS* ARGUMENTS ARE WAIVED, BUT HIS MOTION IS ALSO SO FACIALLY MERITLESS THAT THE COURT CAN DENY IT ON THE MERITS.**

The defendant's opening brief is a seven-page Motion in which he hints at an alleged *Franks* violation but nowhere cites *Franks* or any of the binding precedent applying it in this Circuit. (ECF No. 10). Accordingly, the government properly asserted that his arguments were insufficiently developed and waived. (ECF No. 14 at 8–9). The defendant has now filed a 20-page Reply, in which he cites *Franks* and makes numerous supporting arguments for the first time. (ECF No. 18-2). These arguments are waived.[1] *See Sitka Sound Seafoods, Inc. v. Nat'l Labor Relations*

---

[1] The defendant responds that the government did not give the defense certain materials from the Alexandria Police Department (APD) until after its motion was due. (ECF No. 18-2 at 1 n.1). A few points are worth noting here. At the September 30, 2024, Status Conference, it was the defendant that proposed an accelerated schedule with his motions due by the end of that week. The government was working to obtain the cell site location data and related materials from APD, and on October 3, 2024—the day before pretrial motions were due—informed the defendant's counsel that it would not object to an extension of time. It was incumbent upon the defendant to seek an extension of time rather than filing a motion that lacked a factual basis. (Indeed, the defendant later sought leave to file other, more routine pretrial motions after the motions deadline, without objection from the government.) Once the defendant decided to file his Motion, he assumed the risk that any insufficiently developed arguments would be waived. The government produced the relevant APD materials to defendant's counsel promptly upon receipt. Contrary to the defendant's assertion, they support rather than undermine the statements in the affidavit.

2

*Bd.*, 206 F.3d 1175, 1181 (D.C. Cir. 2000) (noting that, in order to prevent "sandbagging," the D.C. Circuit "has generally held that issues not raised until the reply brief are waived," including when a party refers to an argument in its opening brief and then does not argue that point until its reply brief); *United States v. Fornah*, 124 F. App'x 4, 6 (D.C. Cir. 2005) (applying waiver rule in the criminal context). While the defendant asserts that he did not have certain documents before filing his Motion, he offers no explanation for his failure to cite *Franks* or any other pertinent authority in his opening brief.

Although defendant's *Franks* arguments are waived, for reasons that follow, the defendant's Motion is so facially meritless that the Court can deny the Motion on the merits.

## II. THE WARRANT AFFIDAVIT IS PRESUMPTIVELY VALID, AND THE DEFENDANT HAS NOT MADE THE "SUBSTANTIAL PRELIMINARY SHOWING" NECESSARY TO OBTAIN A HEARING.

The defendant has not come close to meeting his burden under *Franks*. He has failed to make the requisite "substantial preliminary showing," much less *any* showing, that the affidavit contains material false statements or omissions that were made intentionally, knowingly, or with reckless disregard for the truth. Moreover, as to law enforcement's alleged bad faith, the defendant has not made an offer of proof, as required, but instead relies on conclusory arguments of counsel.

### A. The Warrant Does Not Contain Material False Statements or Omissions.

The defendant argues that the warrant affidavit was false and misleading in two respects. First, the defendant takes issue with the allegation that "[t]he real time location and historical records place [him] at his mother's residence almost every night since the day of the offense," asserting that this allegation is false. (ECF No. 18-2 at 8). Second, the defendant asserts that the police omitted a fact that would have negated probable cause: that he lived in Woodbridge, Virginia, from the date of the offense through February 6, 2024. He is wrong on both counts.

3

### 1. The allegations about the cell site location data are true, not false.

The allegations in the March 5, 2024, warrant affidavit concerning cell site location data are true, not false. The defendant's allegation to the contrary is largely a matter of semantics and fails to consider all the information that was known to law enforcement at the time. The relevant allegations are at paragraphs 16 and 17 of the warrant:

> 16. Detective Brattelli researched multiple police databases located an associated phone number of, 202-652-9489, to Niam Pannel. Mr. Pannel has provided this phone number to police and is documented in official police reports. Investigator Gallagher called the number on 2/6/2024 and the person who answered the phone identified himself as Niam Pannell. A search warrant was executed on Mr. Pannell's cell phone for a historical and real time location. The records place Mr. Pannell at the scene of the incident on the day and time it occurred. The real time location and historical records place Mr. Pannell at his mother's residence almost every night since the day of the offense. His mother's residence is located at 5825 Dix Street NE in Washington DC. Detective Brattelli conducted surveillance at this location on 2/6/2024, 2/13/2024 and 2/15/2024 between the hours of 1000 hours and 1400 hours. On each day Detective Brattelli observed a subject that appeared to be Mr. Pannell leave and enter the residence multiple times.
>
> 17. On Monday 3/4/2024 at 1130 hours, Detective Brattelli reviewed the real time location pings related to the phone number associated with Mr. Pannell. On Saturday 3/2/2024 at 2250 hours the real time locations showed within 30 meters of 5825 Dix Street, NE, Washinton DC. The pings continued at this location through the next few days to include the overnight hours. The most current ping showed the real time location as within 222 meters of 5825 Dix Street, NE, Washington DC. Detective Bratelli reviews the real time location pings regularly, and the pings have consistently been at this location through the overnight hours since the warrant was obtained.

Specifically, the defendant takes issue with the sentence: "The real time location and historical records place Mr. Pannell at the scene of the incident on the day and time it occurred." Affidavit ¶ 16. The defendant argues that this statement is false because the police began receiving location data on February 13, 2024, and had only historical location data for the period between December 26, 2023, and that date. (ECF No. 18-2 at 8–9). The defendant further argues that the historical records cannot "place" a person at a particular address but can only identify the location of the cell towers to which a particular cellphone connected. (ECF No. 18-2 at 6, 9). But law enforcement did not present the cell site location data in isolation. By the time that law enforcement applied for a warrant to search the Dix Street Address on March 5, 2024, Detective Brattelli had observed the defendant at that address on three separate dates (February 6, 2024; February 13, 2024; and February 15, 2024) and had real time location data that consistently placed the defendant's

4

cellphone in the area during the overnight hours. So while the defendant is correct that, taken alone, historical cell site location data indicates only the locations of the towers to which a particular cellphone has connected, law enforcement reasonably concluded that the cell site location data "placed" the defendant at the Dix Street Address based on the additional context described above and the reasonable inference that the defendant was the person regularly in possession of his cellphone. *Cf. United States v. Wise*, No. 19-CR-22, 2020 WL 3977661, at *4 (W.D. Ky. July 14, 2020) (admitting testimony in felon-in-possession trial that "the Defendant resided at both of these addresses" where law enforcement's "physical surveillance, as well as their monitoring of cell-site location information, placed the Defendant at both of these residences").

As the government noted in its opposition, the cell site data shows that at 7:19 a.m.—just over 30 minutes after APD was dispatched to the scene of the shooting—the defendant's cellphone connected to a tower located at 6801 Eads Road in Seat Pleasant, Maryland, which is 0.58 miles away from the Dix Street Address (and 12.91 miles from the crime scene).[2] The historical data shows that the defendant's cellphone consistently connected to towers in close proximity to the Dix Street Address almost every night thereafter. Indeed, the defendant has retained an expert, Robert Aguero of CTF DataPro, Inc., whose report on the historical cell site location data (attached as **Exhibit A**) undercuts the defendant's contention that the cell site location data did not place him at the Dix Street Address.[3]

---

[2] The defendant quibbles with this point, noting that the first call did not connect until 9:13 a.m. (ECF No. 18-2 at 11 n.4). But the government never stated that the 7:13 a.m. tower connection was for a call. The 7:13 a.m. connection was for a data session. T-Mobile reports tower connections for calls and data sessions in separate spreadsheets. The government directs the Court to the spreadsheet entitled "Data_Sessions_430705_2026529489."

[3] Notably, the defendant does not cite his expert's report or include any of its maps in his Reply but instead includes a different map that does not show the direction of the cell towers' radio frequency. (ECF No. 18-2 at 12).

The report shows the towers to which the defendant's cellphone connected and uses blue shading to indicate the primary direction in which the antenna's radio frequency travels. As depicted in the report, between December 26, 2023, and February 13, 2024, the defendant's cellphone consistently connected to towers that were in close proximity to, and broadcasted their radio frequency in the direction of, the Dix Street Address. Below are excepts from the report. (The government includes only the data closest in time to the shooting—when the defendant claims he was living in Woodbridge—below; the full report, which is attached as **Exhibit A**, is 154 pages.)

*<u>December 26, 2023 (the day of the shooting) between 9:13 a.m. and 10:31 p.m. (page 8)</u>*



*December 27, 2023, at 2:07 a.m. through December 29, 2023, at 2:53 p.m. (page 12)*



*December 29, 2023, at 10:54 p.m. through December 31, 2023, at 2:40 p.m. (page 16)*



***December 31, 2023, at 6:12 p.m. through January 1, 2024, at 3:17 a.m. (page 20)***



***January 1, 2024, at 10:39 p.m. to January 2, 2024, at 9:02 a.m. (page 27)***



The defendant's expert later prepared a supplemental report on the real time location data (attached as **Exhibit B**). The real time location data even further undermines the defendant's arguments. Below are excerpts from the supplemental report plotting real time location data from February 13, 2024, and February 15, 2024—two of the days when Detective Brattelli observed the defendant at the Dix Street Address.

*February 13, 2024, at 10:55 p.m. (page 3)*



*February 15, 2024, at 4:04 a.m. through 10:34 p.m. (page 5)*

9

The real time data further demonstrates that the cellphone was pinging either at or in very close proximity to the Dix Street Address. (The data presented in the remainder of the supplemental report, which runs through March 6, 2024, shows the same thing). When law enforcement applied for the residential search warrant on March 5, 2024, they had the following information:

- Beginning on the morning of December 26, 2023 (the day of the Alexandria shooting), the defendant's cellphone consistently connected to cell towers that are in close proximity to, and broadcasted their radio frequency in the direction of, the Dix Street Address—including during the overnight hours;

- The Dix Street Address is the defendant's mother's address;

- Detective Brattelli observed the defendant coming and going from the Dix Street Address on February 6, 2024; February 13, 2024; and February 15, 2024; and

- Real time location data places the defendant at and around the Dix Street Address, including during the overnight hours, between February 13, 2024, and March 2024.

Based on the totality of this information and the reasonable inferences that can be drawn from it, it was reasonable for the police to allege that the cell site location data placed the defendant at the Dix Street Address. The defendant's assertion that this allegation was false is meritless.

**2. The defendant did not live in Woodbridge, Virginia, so omitting that address from the search warrant affidavit was not misleading.**

The defendant asserts that law enforcement intentionally misled the Superior Court judge who issued the warrant for the Dix Street Address by purposefully omitting from the warrant affidavit that he lived at a Woodbridge, Virginia, address. (ECF No. 18-2 at 3–5, 14). Because Detective Brattelli confirmed that the defendant had not lived at the Woodbridge address for several months, this claim is meritless.

10

The defendant points out that the February 6, 2024, affidavits in support of the warrants for cell site data include a statement that police reports list a Woodbridge, Virginia, address for the defendant—and that this statement was not included in the March 5, 2024, affidavit in support of the warrant for the Dix Street Address. (ECF No. 18-2 at 4). While the defendant's observation is correct, the inference he draws from it is not. The defendant concludes that "the police determined that [he] resided in Woodbridge at the time of the offense, through at least February 6, 2024, the date of the affidavit submitted to the Virginia court" and that "police had evidence that he lived in Woodbridge on the date of the shooting through February 6, 2024, which negates the suggestion that there was probable cause to believe the firearm was located at the Dix Street Address." (ECF No. 18-2 at 9–10). That is just not so.[4] Detective Brattelli applied for the cell site warrants on February 6, 2024, to determine where the defendant lived, as he had ruled out the Woodbridge address.

The defendant's claim that police had evidence he was residing in Woodbridge is baseless.

## B. The Defendant Has Not Made Any Credible Allegation of Deliberate Falsehood or of Reckless Disregard for the Truth. Nor Has He Supplied the Requisite Offer of Proof.

The defendant's Motion fails because he has not demonstrated that the warrant affidavit contains any false or misleading statements. Even if he had, that would not have been enough to entitle to him a hearing. For the defendant must also make "substantial preliminary showing," supported by "an offer of proof," that law enforcement misled the judge by acting with at least

---

[4] The defendant's expert report confirms that there is no factual basis for this claim. If the defendant were living in Woodbridge, the historical cell site location data would have shown his cell phone regularly connecting to towers in Woodbridge in the hours and days after the offense, not towers that closely surround the Dix Street Address. (The Woodbridge address is approximately 24.89 miles from the Dix Street Address, so it is improbable that the defendant's phone would have regularly connected to towers that closely surround the Dix Street Address.)

11

reckless disregard for the truth.[5] His claims that law enforcement acted in bad faith rely entirely on the conclusory arguments of his counsel. Because he has completely failed to make any credible claim of bad faith, let alone the required "substantial preliminary showing," his Motion must be denied without an evidentiary hearing. *See, e.g.*, *United States v. Matthews*, 172 F. Supp. 3d 1, 6 (D.D.C. 2012) (Walton, J.) ("[T]he defendant has failed to make any offer of proof that [the affiant] omitted this information in a deliberate attempt to mislead the judge who issued the warrant. . . .[T]he defendant's failure to make an offer of proof regarding the affiant's intent to mislead or reckless disregard renders his request for a *Franks* hearing insufficient."), *aff'd*, 753 F.3d 1321, 1327 (D.C. Cir. 2014) ("Here, as in *Becton*, there is no more than a conclusory claim that the officer may have misled the issuing judge, and there is no support in the record for the necessity of holding an evidentiary hearing under *Franks*."); *accord, e.g.*, *United States v. Gaston*, 357 F.3d 77, 81 (D.C. Cir. 2004) (holding that "[t]he district court was surely right" to deny a *Franks* hearing where the defendant "made no offer of proof"); *United States v. Colkley*, 899 F.2d 297 (4th Cir. 1990) ("Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity."); *United States v. Patel*, No. 23-CR-166, 2024 WL 1932871, at *9–10 (D.D.C. May 1, 2024) (Friedrich, J.) (holding that defendant had "fallen far short of the high bar required to show false or misleading statements warranting a *Franks* hearing" where he "failed to identify any false statements or

---

[5] In his Reply, the defendant claims that "[t]he government claims that these omissions and false statements do not warrant a hearing because defense counsel asserted that 'at a minimum the officers were reckless.'" (ECF No. 18-2 at 13 (quoting ECF No. 14 at 14)). This seriously misstates the government's argument. The government agrees that "reckless disregard for the truth" is a sufficient mental state under *Franks*. It takes issue with the fact that the defendant's allegation of recklessness—made as a throwaway at the end of his Motion—was conclusory and not supported by the requisite offer of proof. (ECF No. 14 at 14). His Reply does not cure that defect.

12

omissions or present an 'offer of proof' of [the affiant]'s bad faith"); *United States v. Magruder*, No. 19-CR-203, 2021 WL 5769462, at *7 (D.D.C. Dec. 6, 2021) (Kollar-Kotelly, J.) (holding that defendant "failed to demonstrate that he is entitled to a *Franks* hearing where "[h]is allegation of the affiant's 'deliberate action to deceive' . . . rest[ed] on mere speculation, unsupported by any "'offer of proof.'"); *United States v. Fields*, No. 18-CR-267, 2019 WL 413549, at *2 (D.D.C. Feb. 1, 2019) (Mehta, J.) ("There is simply no evidence before the court that would support applying the dishonesty/recklessness-disregard exception of *Leon*. For the same reason, Defendants are not entitled to a *Franks* hearing.").

## CONCLUSION

For the foregoing reasons, the defendant has not established his entitlement to an evidentiary hearing, much less suppression. This Court should summarily deny his Motion.

                                               Respectfully submitted,

                                               MATTHEW M. GRAVES
                                               UNITED STATES ATTORNEY
                                               D.C. Bar Number 481052

Dated: November 1, 2024        By:    */s/ Paul V. Courtney*
                                                    Paul V. Courtney
                                                    D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                                                    Kyle M. McWaters
                                                    D.C. Bar No. 241625
                                                    Assistant United States Attorneys
                                                    United States Attorney's Office
                                                    for the District of Columbia
                                                    601 D Street NW
                                                    Washington, D.C. 20530
                                                    (202) 252-1719 (Courtney)
                                                    (202) 252-6983 (McWaters)
                                                    Paul.Courtney@usdoj.gov
                                                    Kyle.McWaters@usdoj.gov