```
 1                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES  OF AMERICA,
                                       Criminal Action No.
 4              Plaintiff,             1:24-cr-0329

 5         vs.                         Washington, DC
                                       December 13, 2024
 6   NIAM GEORGE PANNELL,
                                       11:07 a.m.
 7              Defendant.
     _____/
 8

 9              TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE REGGIE B. WALTON
10              UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     For the Government:     KYLE McWATERS
13                           USAO-D.C.
                             601 D Street, NW
14                           Washington, DC 20530

15

16   For the Defendant:      MARY PETRAS
                             TEZIRA ABE
17                           FPD-D.C.
                             625 Indiana Ave, NW, Suite 550
18                           Washington, DC 20004

19

20

21

22
     Court Reporter:         JEFF HOOK
23                           Official Court Reporter
                             U.S. District & Bankruptcy Courts
24                           333 Constitution Avenue, NW
                             Room 4700-C
25                           Washington, DC 20001
```

**P R O C E E D I N G S**

1

2          **DEPUTY CLERK:**  This is criminal matter 24-329,

3    United States of America v. Niam George Pannell.  May I have

4    counsel approach the lecturn and state your appearance for

5    the record, beginning with the government.

6          **MR. McWATERS:**  Kyle McWaters on behalf of the

7    United States, good morning.

8          **MS. PETRAS:**  Good morning, Your Honor.  Mary

9    Petras along with Tezira Abe on behalf of Mr. Pannell.

10         **THE COURT:**  Good morning.  In reference to the

11   expert, I assume the defense is desirous of me entertaining

12   his testimony because you believe that would have an impact

13   on the propriety of the search?

14         **MS. PETRAS:**  Of the search warrant, of the

15   affidavit, yes.  We have moved to suppress based on a false

16   statement in the affidavit and an omission in the affidavit.

17   The expert would go to the false statement.  I don't know if

18   the Court wants me to --

19         **THE COURT:**  I guess I'm sort of perplexed as to

20   how that would be relevant on the issue of whether the

21   police had legitimate justification in relying upon the cell

22   site information as a predicate for seeking the warrant.

23         **MS. PETRAS:**  It's not a question of relying on it,

24   it's a question of how they presented it to the judge.  If I

25   could just use the Elmo for a moment just to make it a

1    little more visual.  This is the affidavit that you're

2    looking at now.  The second highlighted sentence is the

3    sentence that is not true.  It says:  "The realtime location

4    and historical records place Mr. Pannell at his mother's

5    residence almost every night since the day of the offense."

6         THE COURT:  Well, I would agree with that.  It can

7    only put you in a range, it can't identify a precise

8    location, I would agree with that.

9         MS. PETRAS:  That's critical here, because this

10   warrant was based on a shooting -- and just to step back for

11   one moment.  Mr. Pannell had not been charged with that

12   shooting, he's never been charged with that shooting.  When

13   we were here last time -- this I just want to correct for

14   the record, not government counsel who's here today, but

15   another government counsel represented that the gun did not

16   match that shooting, which is true, but then said that the

17   gun matched a murder that they were trying to track down.  I

18   don't want that to color the Court's view of Mr. Pannell.

19   Because before Mr. Pannell was arrested, someone -- this

20   took five minutes to Google, so I don't know how the

21   government didn't know this, but someone else had been

22   charged and convicted of that before Mr. Pannell was even

23   arrested.  So there's no connection with between him and

24   that, and I wanted to clear that up.

25         But as to this warrant and why this false

1    statement matters, the affidavit is based on a shooting that

2    happened on December 26th, 2023.  There was no connection

3    between Mr. Pannell's mother's house, where this warrant was

4    executed, and that shooting.  And there was no connection

5    between Mr. Pannell's mother's house and that gun.  So the

6    only way they can get a warrant for that house is to somehow

7    show that it's his residence.  Because there is circuit law

8    that says that you can get a warrant for someone's

9    residence -- and this particular warrant also has a problem

10   because the length of time between the shooting and the

11   warrant execution is too long.  But in addition to that,

12   they have show it was his residence.

13         This false statement goes directly to that issue,

14   because it makes it sound like Mr. Pannell was living there.

15   But that is not what the data showed.  So by saying it this

16   way, when that's not what the data showed, they misled the

17   judge who signed off on this warrant into thinking that he

18   was living there.  And that, particularly in combination

19   with the omission -- because the omission was that there was

20   a warrant for the cell phone data that they're using in this

21   warrant for the residence.  That warrant for the cell phone

22   data had an affidavit that was nearly identical to this

23   affidavit, of course until you get to the cell phone data

24   part.  It's nearly identical except for one sentence that

25   they took out.  The sentence in the warrant from the --

1    **THE COURT:**  Well, it doesn't say it was his

2    residence.  It says he was staying -- that he was at his

3    mother's residence, but it doesn't say that was his

4    residence.

5    **MS. PETRAS:**  The whole implication of this is to

6    show that he was living there.  Because the only way you get

7    a warrant, when there's no connection between the incident

8    or what you're looking for, is to show that there's -- it's

9    his residence such that there's reason to believe that his

10   belongings are there.  But that's not what they had.  They

11   said that they had location that put him there the night of

12   the shooting and almost every night since, when in fact what

13   they had was three things:  Data that showed that his cell

14   phone -- this red dot is his mother's house, and these --

15   the green dot and the blue dot are two cell phone towers.

16   So all they had was that his phone was pinging off of these

17   two towers the night -- or the days after the shooting

18   between December 26th and later.  At best, it shows he was

19   in the neighborhood.  That's at best what that shows.

20   The next thing they actually had was realtime

21   pings.  But what the warrant doesn't explain is they didn't

22   have any realtime pings until February 13th, nearly a month

23   and a half after the shooting.  And they not only -- only

24   had realtime pings then, the realtime pings themselves don't

25   place him there either.  Because the realtime pings get you

1    a little closer -- I'll give them that, but our expert would

2    explain that the realtime pings covered other residents in

3    that same neighborhood.  So it doesn't -- so the leap from

4    he's in that neighborhood --

5        **THE COURT:**  So what's a realtime ping?

6        **MS. PETRAS:**  A realtime ping is when the police

7    get a warrant and ask the phone company to send them a ping

8    from the person's phone as to where they are at that moment.

9    So they get an e-mail, and then every 15 minutes this is the

10   phone pinged here, the phone -- this is the location.  So

11   the e-mail will have a latitude and longitude for that

12   location, but it also has within meters of distance.  So it

13   will have latitude and longitude, which is somewhere in the

14   vicinity of his mother's house, but within 222 meters,

15   for --

16       **THE COURT:**  But it doesn't place him specifically

17   at that house?

18       **MS. PETRAS:**  No, because the area that is covered

19   by that data includes the house next door.  Sometimes it

20   includes the whole block.  Sometimes it includes just his

21   mother's house and the house next door.  But it's not

22   showing that he's at his mother's house.  So to go to a

23   judge and say we have historical data and realtime data that

24   place him at his mother's house nearly every day since the

25   day of the shooting is just false.  And it's not just false,

1    but it's misrepresenting the critical fact for the warrant

2    of whether or not is there enough to tie this person to this

3    house to believe that evidence of this crime is in that

4    house, and there simply wasn't.

5              Now, the government points out one other thing,

6    which is that they did have an officer go and surveil the

7    house.  But they list I think it's three dates that they saw

8    him at the house in the middle of the day.  So he went to

9    his mother's house to see his mother or somebody else during

10   the middle of the day.  That is not what they explained to

11   the judge in full that they had, and that wouldn't be enough

12   for the warrant.  So the problem here is that by

13   misrepresenting the evidence as it was and not fully

14   explaining what we really have, and by saying it the way

15   they said it, which was false, they have suggested to the

16   judge that, oh, this is where he is, this is where his stuff

17   is, this is where he lives.  Just not true.  He had been

18   leaving in Virginia.  And just before they filed this

19   affidavit, they filed another affidavit that said him and

20   his girlfriend had a residence in Woodbridge, Virginia.

21   They took that statement out of this affidavit.

22             The government now says that's because they

23   determined that he didn't live there anymore.  The statement

24   is still relevant, because it still suggests he had another

25   residence with his girlfriend.  So it undercuts the fact

**1**     that he was ever living with his mother.

**2**           **THE COURT:**  Government.  In addition to what's

**3**     been brought out just by defense counsel regarding the cell

**4**     site information, what also significantly troubles me is the

**5**     information that was in the affidavit regarding drug

**6**     activity, which I assume was suggesting that he was involved

**7**     in the distribution of drugs.  And that because of the

**8**     connection between drugs and guns, and people who are

**9**     involved in the distribution of drugs and the need for them

**10**    to have a gun to protect themselves and protect their

**11**    product, that that would justify a conclusion that a gun

**12**    that he allegedly used 70 days before would still have been

**13**    in his possession because of his involvement in drugs.  But

**14**    as I understand it, there's no evidence in this case that

**15**    would justify that information having been placed in the

**16**    affidavit.

**17**          **MR. McWATERS:**  Your Honor, I'll address that point

**18**    first.  In this particular case, there are no -- there were

**19**    no drug charges brought against Mr. Pannell.  However, there

**20**    were drugs found in the house.  Mr. Pannell's --

**21**          **THE COURT:**  In the house, what house?

**22**          **MR. McWATERS:**  When the search warrant was

**23**    conducted.

**24**          **THE COURT:**  Yeah, but they would have to know

**25**    about drug activity as a predicate for the search prior to

**1**   the actual search.  The fact that they found drugs in the

**2**   house would not be relevant as to whether they had probable

**3**   cause to search the house in the first instance.

**4**          MR. McWATERS:  Your Honor, I guess I'm a little

**5**   confused as to exactly what --

**6**          THE COURT:  I mean, how would -- if you only find

**7**   drugs after the fact, how would the fact that -- how would

**8**   that be relevant as to whether there was probable cause to

**9**   get the warrant to go in and search?

**10**          MR. McWATERS:  Your Honor, so my understanding is

**11**   that the premise of the search warrant was to find the gun

**12**   related to the shooting.

**13**          THE COURT:  Right.

**14**          MR. McWATERS:  If there was any reference to drug

**15**   activity, that was not my investigation, that would have

**16**   been Alexandria PD's investigation.

**17**          THE COURT:  But it was in the affidavit, wasn't

**18**   it?

**19**          MR. McWATERS:  I don't recall seeing that, but

**20**   it's possible that I missed it.

**21**          THE COURT:  It is -- I looked at it, it is in

**22**   there.  It's talking about how when people are involved in

**23**   the distribution of drugs, that they have guns.  And I

**24**   understand that.  But here, there's no evidence whatsoever

**25**   regarding his alleged involvement in drug distribution

1   activity.  It seems to me it was either reckless on the part

2   for that to be there or it was intentional for the purpose

3   of justifying a search 70 days after the event that took

4   place out there in Virginia.

5          MR. McWATERS:  Your Honor, so which -- are you

6   talking about the search warrant for the house or the search

7   warrant for the cell site?

8          THE COURT:  I believe it's the search warrant for

9   the house, the affidavit.  I read it yesterday when I was

10  preparing, I've just got to find it again.

11         MR. McWATERS:  So I just received a copy of it

12  from Ms. Petras, and I appreciate her handing it to me.

13  I've got a copy of the cell site warrant but not the house

14  warrant.  If Your Honor's talking about under paragraph

15  four, subparagraph A talking about the narcotics, I think

16  that's discussion -- I think that he's discussing -- the

17  affiant is just discussing his background as opposed -- like

18  when it comes to his investigation.  So I don't think he's

19  saying --

20         THE COURT:  But how would that be relevant?  I

21  mean, I sat over there for 18 and a half years on the

22  superior court, and I sat as judge in chambers a number of

23  times and reviewed warrants.  I surely, looking at this,

24  would have felt it had some relevance to this case,

25  otherwise why is it in there.  The fact that he's got that

1    experience regarding drugs and gun activity, it seems to me,

2    is totally irrelevant.  So I would have looked at that as a

3    predicate, at least in part, for the belief that 70 days

4    after the shooting, that he may still be in possession of

5    the gun because he was involved in drug activity.

6         **MR. McWATERS:**  Your Honor, to be honest with you,

7    I don't know exactly what was -- this warrant was sworn out

8    before my office got involved in the investigation.  We

9    got involved --

10         **THE COURT:**  Because it says:  "During your

11   affiant's tenure with the Metropolitan Police Department,

12   your affiant has learned the following in reference to

13   persons engaged in illegal firearm possession," and then he

14   talks about narcotics.

15         **MR. McWATERS:**  Right.  Again, my understanding is

16   that this is -- reading the warrant, is that this is about

17   his background.  I don't think he's saying there's any

18   reason to believe -- if you look at like the investigation

19   part of the warrant, there doesn't seem to be any reference

20   or discussion regarding Mr. Pannell's potential use of a

21   firearm in furtherance of a drug trafficking crime.  So I

22   think like most of the time when officers do search

23   warrants --

24         **THE COURT:**  They need to stop doing that.

25         **MR. McWATERS:**  Well, Your Honor --

1            **THE COURT:**  I mean, this is misleading.

2            **MR. McWATERS:**  Well, Your Honor, that might be a

3      separate issue.  I don't think that's the issue that we're

4      dealing with her.  It certainly wasn't raised by defense in

5      their motion.  But what I --

6            **MS. PETRAS:**  I'm going to object to that, it was

7      raised.

8            **THE COURT:**  They did raise it.

9            **MR. McWATERS:**  Well, I think, Your Honor, that

10     the -- a lot of times when officers swear out these

11     warrants, they have like kind of a ready to go background of

12     their involvement in investigations that they put into these

13     warrants.  I think that's --

14           **THE COURT:**  If they're doing that, they need to be

15     more careful, because you're invading someone's house.

16           **MR. McWATERS:**  Your Honor, I understand that, and

17     that might be an issue for another day.  Here, I don't think

18     that -- my reading of this warrant, and of the judge who

19     swore out the warrant, did not seem to feel like the -- that

20     the affiant's discussion of his investigative background --

21     and he did talk about drugs, that it didn't really have any

22     impact.  My reading of this is that this is just the

23     affiant's background and what he's -- what his experience

24     is.

25           **THE COURT:**  I don't see -- with all due respect,

1    counsel, I don't see how you can make that argument, because

2    he's talking about it in conjunction with firearm

3    possession.  So he's drawing an analogy, it seems to me,

4    between someone who possesses a gun and then he starts to

5    talk about all this drug stuff.  I don't see how you

6    separate the two.  And that's something that the police

7    department needs to correct, if that's what they're doing.

8    Because, as I said, I sat over there for 18 and a half

9    years, I reviewed these type of warrants.  I sure would have

10   viewed this from the standpoint of this being in the warrant

11   because of some belief that he was involved in drug

12   distribution activity; and therefore, even though it was 70

13   days after the shooting, you can still believe that he had

14   the gun, because he would need the gun in order to protect

15   himself because of his drug activity.  That's the way I

16   would have read it.

17          **MR. McWATERS:**  Your Honor, I understand that, but

18   I think the bulk of the probable cause here in this warrant

19   talks about the investigation into the shooting and to

20   Mr. Pannell's gun possession.  There's no mention of drugs

21   in the actual body of the search warrant under the

22   investigation.

23          **THE COURT:**  What would be the belief -- assuming,

24   hypothetically, that he was involved in a shooting out there

25   in Virginia 70 days before, that he would still have that

1   gun?

2   **MR. McWATERS:**  Well, there are -- guns are

3   expensive and are items that people normally keep around.

4   So I think that is the basis for believing -- I mean, people

5   who have guns usually keep them.  Like, you're not getting

6   rid of them every week, you have --

7   **THE COURT:**  Also, people who use guns also get rid

8   of those guns sometimes because they don't want to be

9   identified as having been involved in a shooting.

10   **MR. McWATERS:**  That might be fair, Your Honor.

11   But here, the gun was found, the gun was recovered.

12   **THE COURT:**  Again, what difference does that make?

13   That was after the fast.  We don't judge what was recovered

14   in assessing whether the entry itself was justified.

15   **MS. PETRAS:**  Your Honor, just so the record's

16   clear, too, not only the Court's point, but it wasn't the

17   gun.  They said at the last hearing it doesn't match.

18   **MR. McWATERS:**  No, no, Your Honor, I don't believe

19   that I said that the gun doesn't match.  What I said was I

20   don't think that there was a casing recovered from the

21   December 27th or 26th shooting -- the December 26th

22   shooting.  I don't think there was a casing recovered, so

23   analysis was not done between those two firearms.  The

24   firearm did come back to another shooting that involved a

25   homicide that was earlier, I think, in June or July of 2023.

1    And at the last hearing, I did tell -- I've told Ms. Petras

2    this, and I told Your Honor this at the last hearing, that

3    at the time I wasn't sure if Mr. Pannell was a suspect in

4    that homicide.  I have since spoken to the detective, and he

5    told me that there were -- I mean, this is kind of getting

6    far afield.  There were a bunch of firearms involved in that

7    homicide, a bunch of casings were recovered.  This gun was

8    just one of many guns that were traced back to that

9    shooting.

10    Mr. Pannell is not charged with anything related

11    to that homicide.  We have not moved to introduce evidence

12    of that homicide at all here.  So the fact that the gun

13    traced back to the homicide is kind of irrelevant, the

14    government doesn't intend to introduce that evidence here.

15    **THE COURT:**  What about the cell site information

16    and the position that the defense takes, that the warrant,

17    as drafted, is misleading in that it is suggesting that that

18    particular residence was in fact identified through the cell

19    site information as a place where he was staying when in

20    fact that's not accurate?

21    **MR. McWATERS:**  Yes, Your Honor.  So I guess a

22    couple of things.  One -- and Ms. Petras did point this out

23    at the end, but if you -- in that same paragraph, paragraph

24    16, it does talk about how Detective Brattelli did

25    surveillance on that residence and saw Mr. Pannell coming in

1  and out of that residence on multiple occasions.

2  **THE COURT:**  Three occasions?

3  **MR. McWATERS:**  Three, yes, sir.  And Your Honor,

4  if I might connect my laptop here.  Ms. Petras provided the

5  government with kind of two different expert reports.  The

6  first one talked about the historical data that the police

7  recovered from the search warrant, and then the realtime

8  pings that she's talking about.  The government included

9  both of those expert reports as exhibits to our opposition

10  and then to our surreply.  And I will show you -- Ms. Petras

11  showed you one of those images from there, but I'll show you

12  this one.  And this is it is from -- this was included in

13  our surreply, Your Honor, as an exhibit.  This is, I

14  believe, their supplemental expert report.

15  So here, 5825 Dix Street is the building that has

16  the X there -- and this is on 2/13/24.  The blue dots and

17  then the circles are the realtime pings that show where

18  Mr. Pannell's phone was pinging off of once they got

19  realtime.  And this is February 14th, 2024; February 15th,

20  2024; February 16th -- and I'll just go through a couple of

21  them.  Your Honor, it is fair that there is a range here of

22  where these dots are.  But they are primarily -- many of

23  them, particularly here on the 17th, almost all of the pings

24  are -- actually are directly in the house.  And then if you

25  go through all of them -- I won't go -- this is a 27-page

**1** exhibit, and there's also more that Ms. Pannell (sic) had in

**2** the first expert report.

**3** But if you look at all of them -- and the

**4** government included these as attachments to our exhibits.

**5** If you look at all of them together, I don't think that the

**6** statement in the affidavit is actually untrue or misleading.

**7** These -- both the historical cell site data and these

**8** realtime pings do place Mr. Pannell, in some instances, in

**9** the actual house and, in some instances, in the vicinity.

**10** But during the course of the investigation, Mr. Brattelli

**11** had a couple of things. One, he knew that -- he knew where

**12** Mr. Pannell's mother's residence was, which was at 5625 Dix

**13** Street, number one -- oh, I'm sorry, 5825 Dix Street, number

**14** one. And number two, he saw him go in and out of that

**15** building on multiple -- yes, it was only three, but that in

**16** conjunction with the realtime pings, I do think that the

**17** officers -- or that the detective's statement in the

**18** affidavit is fair and not mistaken.

**19** **THE COURT:** Okay. So I could understand that it

**20** could be reasonably inferred that he was conceivably staying

**21** at his mother's house, at least on some occasions. But what

**22** about -- I understand what you say regarding guns and the

**23** value of guns and so forth. But 70 days after the event, I

**24** guess there was some evidence that he had a residence with

**25** his girlfriend out in Virginia also.

1          I mean, how could the judge who signed off on the

2     warrant, if she didn't have this information about drug

3     activity, have concluded that 70 days after he was still

4     going to have that gun and it was going to be at that

5     location?

6          **MR. McWATERS:**  Your Honor, so I can address the

7     issue of the 70 days in between, because I've talked to

8     Detective Brattelli.  I didn't bring him here, but he is

9     going to -- if the Court does still have the hearing next

10    week, he is going to come to that, so we can ask him

11    questions there.  But I spoke to Detective Brattelli, and

12    the reason for the 70 days was because that's how long it

13    took him to really find where Mr. Pannell was.  With regard

14    to the address in Virginia, the fact of the matter is, Your

15    Honor, Mr. Pannell wasn't there.  Detective Brattelli

16    actually went to the apartment complex where he had that

17    residence and spoke to them, and Mr. Pannell hadn't been

18    there for sometime.  I don't remember the exact amount of

19    months off the top of my head, but Mr. Pannell hadn't been

20    there.

21         So that's why in this warrant they took that

22    statement out.  Yes, it was in the other warrants, because

23    that was before Detective Brattelli had gone in and

24    investigated and determined that he didn't live there

25    anymore.  After Detective Brattelli made that determination,

1    that's why it was omitted here.  So he already ruled that

2    out as a reason -- or as a potential place for Mr. Pannell

3    to be, which is why it wasn't in this warrant.

4            And then part of the time why it took Detective

5    Brattelli so long to locate Mr. Pannell was because he had

6    to rundown the Virginia address.  He determined -- he

7    excluded that as a potential place for Mr. Pannell to be.

8    And then he had to discover -- he had to figure out his

9    phone number.  And it took time to get a warrant for that,

10   and then to get the historical cell site and to do the

11   surveillance.  Detective Brattelli worked on this fairly

12   quickly, as quickly as he could, from December 26th until he

13   submitted this affidavit.  I believe he contacted MPD -- I

14   think it says here in the warrant, the first week of

15   February, I think -- I'm sorry, the last week of February,

16   February 27th.  So it was almost right at 60 days when

17   Detective Brattelli contacted MPD.  And then obviously it

18   just takes time to get a warrant together and get it

19   submitted to the Court for the warrant to be sworn out.  But

20   that is -- it took -- that's the reason for why it took a

21   little bit of time to get there.

22           Your Honor, personally the government would put

23   forward here that 60 days is not unreasonable to believe

24   that Mr. Pannell would still have that gun, based on the

25   arguments that I've already made.

1          **THE COURT:**  Okay.  Anything else?

2          **MS. PETRAS:**  A couple of things, Your Honor.

3    First of all, there's four problems with this warrant.  One

4    is the irrelevant evidence about drug trafficking.  Two --

5    and the suggestion that Mr. Pannell was involved in it.  Two

6    is the time, the 70 days between the shooting and the search

7    warrant.  Three is the false statement with regard to what

8    the cell phone data showed.  And I want to be clear, what

9    government counsel just showed and their position that those

10   dots show where he is and that he's in his mother's house,

11   that's not what the dots show.  We didn't attach the reports

12   to our motion, because we intended to present it to the

13   Court so that the expert could explain all of what it means.

14         It doesn't mean that he was there, what it means

15   is that he could have been in that location of that

16   neighborhood.  It does not place him in that house.  We all

17   know if you grow up in a neighbored, you know people in the

18   neighborhood.  That doesn't mean he's at his mother's house.

19   The fourth problem with the warrant is the omission of the

20   Virginia address.  Even if they had determined that he

21   wasn't there, hadn't been there when they were looking, that

22   is -- the question is whether or not it's information that,

23   as a judge looking at the warrant, would you have wanted to

24   know that?  Would you have wanted to know that just days

25   earlier, they had represented that his residence was in

**1**  Virginia; that on his court dockets in Virginia, he had a

**2**  Virginia address; that he had a Virginia driver's --

**3**  non-drivering ID; that he had a girlfriend that he lived

**4**  with in Virginia, would you have wanted to know that?  Of

**5**  course you'd want to know that to determine whether or not

**6**  this is the residence where he's staying and there's

**7**  probable cause to believe that the gun is there.  But

**8**  that's --

**9**           **THE COURT:**  But he says the reason that wasn't put

**10**  in there was because the detective had in fact determined

**11**  prior to seeking the warrant that he wasn't residing there.

**12**           **MS. PETRAS:**  Even if he had determined he wasn't

**13**  residing at that Virginia address -- which we don't exactly

**14**  know because he didn't explain it in the warrant.  Even if

**15**  that's what he had done, wouldn't you want to know that this

**16**  person who they're saying is residing at his mother's house

**17**  in D.C. with this little bit of data with regard to the cell

**18**  phone, that he actually had a Virginia ID with a Virginia

**19**  address; and that he -- the police had determined that he

**20**  had a Virginia -- a girlfriend who lived in Virginia, and

**21**  that they -- that resided together at a Virginia address,

**22**  wouldn't you want to know that?

**23**           And then perhaps the officer would say:  But I

**24**  went to that address and they moved out, or I went to that

**25**  address and I didn't see him there.  Whatever it is, you'd

1   still want to know when you're factoring in is this enough

2   to say he's -- he lives at this residence and there's

3   probable cause to think that that gun might be there.

4   Wouldn't you want to know that?  And when did he move out;

5   was he there in December of -- when the shooting occurred.

6   All of that is relevant to whether -- the determination of

7   whether or not there's probable cause to search this

8   particular residence at this particular time.

9          And if they had, one, stated -- so in order to

10  look at the affidavit now, since it's clear that the

11  statement with regard to the cell phone data is false, the

12  only thing a court can do in assessing now whether or not

13  there would be probable cause is to take that statement out,

14  take out the statement that:  "The realtime and historical

15  data place Mr. Pannell at his mother's residence almost

16  every night since the day of the offense."  You have to take

17  that out and add in the information with regard to the

18  Virginia residence.

19          So if you take that out, then what do you have?

20  You have that they -- his mother lives on Dix Street.  You

21  have that they went to the Dix Street address on

22  February 6th, 13th and 15th, more than a month after the

23  shooting.  They saw him there between the hours of

24  10:00 a.m. and 2:00 p.m. coming in and out.  So he saw his

25  mother on those days, you have that.  And then you have that

**1**   on March 4th, they reviewed the locations and found that he

**2**   was within 30 meters of that address.  And another time they

**3**   showed that he was within 222 meters of that address.

**4**   That's what the affidavit says.  And if you're sitting there

**5**   as a judge and you have that, and it also explains that he

**6**   had this Virginia ID but we don't find him there, would you

**7**   sign off on this and say that that's enough?  I don't think

**8**   the Court would.

**9**          **THE COURT:**  Thank you.  Well, the Fourth Amendment

**10**  obviously is a critical component of our Constitution in

**11**  that it does protect people and the places where they are

**12**  from invasion -- legitimate invasion by the police for

**13**  legitimate law enforcement related reasons.  The Supreme

**14**  Court, in its wisdom -- and I don't disagree with what the

**15**  Supreme Court ultimately did regarding adopting the

**16**  exclusionary rule, because obviously there has to be a means

**17**  by which the Fourth Amendment is enforced, concluded that

**18**  when there's not a sufficient basis for a search to occur,

**19**  that despite the cost to society from the suppression of

**20**  evidence, that suppression should be an appropriate remedy

**21**  in order to make sure that law enforcement does not abuse

**22**  its authority when it comes to going into somebody's

**23**  personal residence or otherwise searching someone in

**24**  reference to the investigation regarding suspected criminal

**25**  activity.

1          Here, I appreciate that once a warrant has been

2    issued, it has -- you know, presumptively the search becomes

3    lawful or constitutional.  But I think it is important that

4    the information provided to a judge or a magistrate for the

5    purpose of acquiring a warrant be accurate.  The information

6    here was not totally accurate in several respects.  I agree

7    with the defense that while the cell site information would

8    have placed him in a proximity to his mother's house, that

9    the evidence did not specifically indicate, as the

10   warrant -- affidavit indicated, that he was there on a daily

11   basis at that house.  It may have placed him in the vicinity

12   of the house, but not at the house.  And the warrant didn't

13   say the vicinity of the house, but it said he was staying at

14   the house.  And I think that was not an accurate statement.

15         I don't find convincing the evidence -- the

16   position taken by the defense regarding failure to include

17   in the affidavit the fact that he had at some point a

18   residence with his girlfriend out in Virginia as somehow

19   seeking to mislead the Court.  I don't give any real

20   credence to that.  But what I find, in addition to the

21   incorrect information regarding the cell site information

22   that was in the affidavit, also significant is this

23   information about drug activity.  Because I don't see how

24   the detective's experience regarding the investigation of

25   drug activity was in any way relevant to this case since

**1**   there's no evidence in this case that the defendant was

**2**   involved in drug distribution activity. And therefore, you

**3**   could draw some correlation between that activity and guns

**4**   to conclude that 70 days after this shooting that took place

**5**   out in Virginia, it could be believed that if the defendant

**6**   was involved in that shooting, that he would still have the

**7**   gun in his possession because of his involvement in drugs,

**8**   and therefore the need to have a gun to protect himself and

**9**   to protect his activity involved in such activity.

**10**         But I can't, again, perceive as to why that was in

**11**   there other than neglect or recklessness on the part of the

**12**   detective. But also, I mean, I can assure you that having

**13**   reviewed a number of warrants for a number of years in

**14**   similar cases like this, that I would have considered that

**15**   since this information is in there about his background,

**16**   that there was a belief that the police had reason to

**17**   believe he was involved in drug distribution activity. And

**18**   therefore, even though a 70-day period had elapsed between

**19**   the shooting and when the search warrant was acquired, that

**20**   it could be reasonably believed that he would still be in

**21**   possession of the gun; and if he was staying at his mother's

**22**   house, that the gun conceivably could be located at that

**23**   address.

**24**         I just can't agree that the warrant was not -- or

**25**   the affidavit was not misleading, and that that incorrect

1  information caused the judge -- I have a lot of respect for

2  Judge Beck, I served with her, that she would have issued

3  this warrant had it not been for the belief that this case

4  had something to do with drugs.  And therefore, even though

5  the lapse of time was so significant, that nonetheless it

6  could be believed that the gun would be found in his

7  mother's house.  And I think that when you're talking about,

8  again, going into somebody's castle without authorization

9  other than the authority given by a judge, that people have

10  a right not to have that occur unless there is a good faith

11  probable cause basis to do so.

12      I have to conclude, despite the presumption that's

13  given to conduct a search when a warrant has been issued,

14  that this case just goes beyond what the Fourth Amendment

15  authorizes.  As much as I don't like to see evidence

16  suppressed, the Fourth Amendment has to be enforced.  I just

17  don't think that we can give law enforcement the authority

18  to present this type of incorrect and misleading information

19  to an issuing judge and justify the invasion of someone's

20  residence for the purpose of trying to find evidence

21  regarding criminal activity.

22      So I would have to conclude that the warrant would

23  not have been issued but for the misleading information

24  regarding the cell site evidence coupled with the misleading

25  impression that this case somehow involved drugs; and

1    therefore, even though a 70-day period had elapsed, that the

2    judge could nonetheless still believe that the gun was still

3    in the defendant's possession and therefore would be found

4    in the location of his mother's house -- which was

5    misrepresented by way of the cell site evidence as to

6    whether he was actually staying there during that entire

7    period, as the warrant suggests.  And so with reluctance, I

8    would have to conclude that the gun that was recovered has

9    to be suppressed.

10          We do have a trial date.  I assume that the

11   government may want to appeal to the Circuit, but I assume

12   that that trial date we would have to vacate.  And I guess

13   we'd come back 30 days from now to see if the government has

14   decided to appeal.

15          **MS. PETRAS:**  Your Honor, I'd ask the Court to

16   consider releasing Mr. Pannell.  I'd say a couple of things.

17   First of all, when Mr. Pannell came in, we did not challenge

18   detention for a couple of reasons.  One, this case was

19   originally brought in superior court in March when the

20   search warrant was executed.  He was released, and then he

21   failed to appear.  He was ultimately picked up after he was

22   indicted on this case.

23          However, he was struggling with opioid addiction,

24   and when he came in, I was prepared to make an argument to

25   get him released -- because we had several options.  He

1     asked me not to because, frankly, he wanted to get ahold of

2     the addiction.  He talked to the people at D.C. jail, they

3     put him on Suboxone.  He's been on Suboxone for several

4     months.  I had actually planned on filing a bond review

5     motion, so I had been putting that together.  His girlfriend

6     does live in Virginia, he can go and live with her.

7          I could also make arguments -- I actually have the

8     draft of the motion to -- for release, if the Court cares.

9     Obviously without the evidence, there is no evidence.  But

10    even if the Court hadn't suppressed the evidence, this gun

11    was found in a closet that -- I could show you the pictures.

12    The closet was blocked when they went in.  They say

13    Mr. Pannell was sleeping in that room.  It's his mother's

14    house.  His uncle was there.  His uncle was in the basement

15    with drugs.  His uncle has a record, he's charged with

16    something else.  There were other people staying there.

17         They take this closet -- which was blocked by this

18    big bin of clothes.  They couldn't open it until they moved

19    all of the stuff.  They finally open it.  There's a mattress

20    in there, and it is literally jam-packed with stuff --

21    trash, stuff, all kinds of things.  It took them 10 minutes

22    to empty it out and empty it out and empty it out -- and

23    I'll show you on the Elmo.  This is what the -- so this is

24    the door to the closet, it was closed and blocked.  This is

25    how far they could open it when they first opened it.  You

1    can see this is how far they opened it.  Some of this stuff

2    was moved.  There's a big bin blocking the closet.  They

3    moved that, opened it up.  I don't know if you can tell, but

4    that's a mattress, and then you can see all of this stuff.

5           And then literally it's just pages and pages of

6    stuff until they get through all of this, taking all of this

7    out of the closet, all of this out of the closet, all of

8    this out of the closet, all of this out of closet, all of

9    that and more and more and more.  It's 10 minutes until they

10   find this gun in the back of the closet.  And on the gun,

11   there's female DNA, there's two other people's DNA.  They

12   say that there's a -- one of these STRmix comparisons to

13   Mr. Pannell.  But obviously you share your DNA, and half

14   your DNA comes from your mother.  There's female DNA on

15   there.  The closet is full of stuff.  Who knows whose DNA is

16   on that stuff.  This prescription pill bottle right here has

17   Alfonso Pannell's name on it, his brother's name.

18          So this isn't a case that's even close, so I don't

19   imagine that the government's going to appeal this, because

20   why would you go through an appeal to come back down for a

21   case like this.  I can't imagine there being a conviction in

22   this case.  So for all of those reasons, because he's on the

23   Suboxone now -- he's also talked to the people at the jail

24   about what happens when he's released, because he's worried

25   about that because -- and I don't want to misstate this, but

**1** I believe that he was released from BOP last on his felony

**2** conviction in 2017.

**3**      And then he was doing pretty well for a while.  He

**4** was working -- he was released from the halfway house in

**5** 2017, and he began working at the Saxon Collaborative

**6** Construction company as a journeyman carpenter.  That

**7** company went out of business, but he quickly found new

**8** employment at a warehouse.  He successfully completed his

**9** term of supervision in that prior conviction.  He was then

**10** working for this warehouse that served like fast food

**11** restaurants, so he would pull all the items that they needed

**12** to stock.  And then he -- he had that job when he completed

**13** his term of supervised release.  That offense occurred in

**14** 2011, and there was an offense in 20 -- he completed the

**15** supervision for the 2011 offenses in 2020.

**16**      Then he continued to work until 2022, when he

**17** found a new job with better benefits at George Mason.

**18** Unfortunately, later that year, he broke his collarbone

**19** riding a dirt bike, and he went to the hospital and was

**20** prescribed opioids.  That's when he had the downfall that

**21** sort of led him to where he is today with the addiction.

**22** But the difference between when he was originally arrested

**23** in this case and now is the Suboxone, which has really made

**24** a life-altering difference.  And I can tell the Court the

**25** difference between the Mr. Pannell that I met when he came

**1**   in and the one that's sitting here today.  He's actually

**2**   kind of grateful for it.

**3**        But there's no reason to detain him.  One, because

**4**   the evidence has been suppressed, and on a very solid basis.

**5**   Two, because the government, I would guess, is unlikely to

**6**   appeal a case where there's little evidence.  So I'd ask the

**7**   Court to consider releasing him today.

**8**        **THE COURT:**  Government.

**9**        **MR. McWATERS:**  Your Honor, a couple of things.

**10**   First, the government would ask for your Court -- for the

**11**   Court to hold your order in abeyance until the actual

**12**   suppression hearing next week.  The government was prepared

**13**   here to come and argue the motions hearing with regard to

**14**   the request for the expert.  If the Court is -- obviously,

**15**   if the Court wants to have a full suppression hearing, the

**16**   government would have brought witnesses, Detective

**17**   Brattelli --

**18**        **THE COURT:**  What's going to change the information

**19**   that was in the warrant that provided the predicate for the

**20**   probable cause determination?  If there's some evidence

**21**   that's going to change that --

**22**        **MR. McWATERS:**  Well, Your Honor --

**23**        **THE COURT:**  -- I don't see how you can change the

**24**   words that are in the affidavit.

**25**        **MR. McWATERS:**  Well, I think -- well, a couple of

**1**   things.  One, Your Honor could hear from -- because the

**2**   warrant was sworn out, I believe, by Sergeant Possinger,

**3**   Scott Possinger, of MPD.  You could hear from him regarding

**4**   why he put those things in the first part of the affidavit,

**5**   is that part of his normal course when he swears out search

**6**   warrants.  I think that that is something that could be

**7**   relevant to the Court's determination.  And then, Your

**8**   Honor, speaking -- Detective Brattelli is the one who told

**9**   Sergeant Possinger the information regarding his

**10**  surveillance on Mr. Pannell, and his understanding of what

**11**  the cell site data returned.

**12**          And Your Honor, I mean, obviously the government

**13**  disagrees with Your Honor's position on what the cell site

**14**  data shows in relation to what the information is in the

**15**  affidavit.  But I think hearing from the witnesses who put

**16**  that affidavit together could help the Court understand what

**17**  the thinking was behind what the final product in the

**18**  affidavit looked like.  Your Honor, I mean, that's what the

**19**  government's position would be.

**20**          **THE COURT:**  I just don't see how that changes the

**21**  words that are on the document itself.  As I said, the

**22**  words, in my view, misrepresented -- whether it was

**23**  intentional or whatever, what the cell site information

**24**  indicated.  It did not show that he was living at that -- or

**25**  was at that location.  It indicated he was around that

**1**   location but not at it, and that's, in my view, significant.

**2**       But as I say, what I found most significant is

**3**   this -- regardless of why it's there, the fact that it

**4**   seemed to be suggesting that the 70-day lapse was

**5**   understandable because of his involvement in drug activity,

**6**   which there's no evidence that that is the case.

**7**       **MR. McWATERS:**  Well, Your Honor, again, I do think

**8**   that it would be important to hear from -- I mean, the

**9**   government -- again, we were prepared -- we had -- both

**10**   Detective Possinger and Detective Brattelli were handsed and

**11**   ready to come -- well, Detective Brattelli is Alexandria

**12**   Police Department.  But we had them noticed for the hearing

**13**   next week to come talk about --

**14**       **THE COURT:**  But how does what they were thinking

**15**   about why they put it there, how does that change what's

**16**   there?

**17**       **MR. McWATERS:**  Well, Your Honor, because I think

**18**   it goes to -- when they drafted that warrant, it goes to

**19**   what they were thinking when they put those words there and

**20**   their understanding of the data that they had.  It's

**21**   possible --

**22**       **THE COURT:**  But what's important is what the judge

**23**   saw, not what was in their mind.

**24**       **MR. McWATERS:**  Well, Your Honor, I think that it

**25**   is important what their understanding of the data was.  When

**1**    Detective Brattelli looked at those pings, in his mind, he

**2**    may have thought that it was -- it did show that Mr. Pannell

**3**    was at the residence.

**4**         THE COURT:  But what difference does that make?

**5**    The judge didn't know that that was what was in his mind.

**6**    The judge could only rely upon what was in the affidavit.

**7**    So I just don't see what he was thinking and why he decided

**8**    to put it in the terms that he did, how that changes what

**9**    the judge looked at.

**10**        MR. McWATERS:  I don't think it changes what the

**11**   judge looked at, but Your Honor said that there were

**12**   misleading statements and facts in the affidavit, and I

**13**   think from --

**14**        THE COURT:  Misleading from the observations of

**15**   the judge, based upon what she was seeing.

**16**        MR. McWATERS:  But I think that it's important to

**17**   hear from the detective on whether -- if you're going

**18**   to make -- I mean, it -- I think that it's important to hear

**19**   from the detective in terms of what they were thinking and

**20**   why they put the things in the affidavit.  I do think it

**21**   matters, their thinking behind putting the affidavit

**22**   together.

**23**        THE COURT:  Do you have case authority?  I don't

**24**   know of any case authority that says that.  All the cases

**25**   that I'm familiar with says that you look at what's in the

**1**  affidavit in support of the warrant, and that that provides

**2**  the basis for whether the judge was accurately advised of

**3**  what the circumstances were.

**4**      **MR. McWATERS:**  Well, I think whether or not there

**5**  was a misleading statement or fact in the affidavit, I

**6**  think, does go to whether or not the detective --

**7**      **THE COURT:**  But what was in his mind as to why he

**8**  put it there, the judge didn't know that.  The judge has to

**9**  rely upon what he or she sees, what he or she is looking at.

**10**  And if what he or she looked at is not consistent with

**11**  reality, what was in the minds of the detectives, it seems

**12**  to me, doesn't change that.

**13**      **MR. McWATERS:**  Well, Your Honor, actually, I think

**14**  the standard is whether or not there were misleading

**15**  statements put into the affidavit.

**16**      **THE COURT:**  Right.

**17**      **MR. McWATERS:**  I think a determination about

**18**  whether or not the statement was misleading does have to

**19**  rely on what the affiant was thinking when they put that

**20**  statement in the warrant.  A misleading statement implies

**21**  intentionality, meaning that the affiant put something in

**22**  the warrant that they thought would mislead the judge.

**23**      **THE COURT:**  I don't think it has to be

**24**  intentional, I think it could be negligent.  It doesn't have

**25**  to be intentional, but the judge can only operate based upon

**1**    what he or she can see and not what's in the minds of the

**2**    detectives who put the words there.  So I just don't see how

**3**    it changes the landscape because they didn't

**4**    intentionally -- if that's in fact the case, did not

**5**    intentionally intend to try and mislead the judge.  The

**6**    question is whether the words on the document did.

**7**         **MR. McWATERS:**  Your Honor, I actually think that

**8**    the intention of the affiant, in terms of what they put in

**9**    the warrant, I think that is relevant.  I mean, I can go

**10**   review case law -- and I think we put something in our

**11**   motion.  But I do think that the affiant -- there is a level

**12**   of intentionality that is -- that has to be present in order

**13**   for the Court to find that the Court was misled

**14**   intentionally by the affiant in what they put in the

**15**   affidavit.

**16**        And so if that's the case, Your Honor, I think

**17**   that listening to and hearing the witness of the person who

**18**   actually put the affidavits -- or listening to Detective

**19**   Possinger and -- Sergeant Possinger and Detective Brattelli

**20**   about what was going through their minds when they put the

**21**   affidavit together, I think, is relevant to the

**22**   determination about whether or not they were trying to

**23**   mislead the judge.

**24**        **THE COURT:**  Any response?

**25**        **MS. PETRAS:**  The standard is intentional with

**1** reckless disregard, Your Honor.  So it doesn't matter what

**2** they thought, what matters is what the facts are.  What they

**3** said wasn't true.  So whether they said it -- purposely said

**4** it untruthfully or it was in reckless disregard of what the

**5** data actually showed, and whether or not there was any drug

**6** connection, it doesn't matter, either way there's no basis

**7** for the warrant.  I was trying to look for it, but the

**8** government, in their own pleading, recognized that reckless

**9** disregard was enough.

**10**       **THE COURT:**  Well, I just don't see how the now

**11** expressed subjective perspectives that the drafters of the

**12** affidavit had, and why they phrased what they put in the

**13** affidavit as they did, I just don't see how what was in

**14** their mindset when they did that is relevant.  And as I say,

**15** what is relevant is what was on the document which the judge

**16** had to rely upon in deciding whether or not there was

**17** probable cause to authorize the search.  And I just don't

**18** see how anything they can say can change what those words

**19** were and what the judge relied upon.

**20**       So I don't see a need to have that hearing.

**21** Again, the government can appeal.  If the Court of Appeals

**22** tells me something different, obviously I live with that.

**23** But I just don't see what's being indicated as a sufficient

**24** justification to defer finalizing my ruling regarding the

**25** suppression of the gun.

1      Does the government have any position regarding

2   the request for release?

3      **MR. McWATERS:**  Your Honor, if I might, just one

4   last thing.  Ms. Petras is right that it is -- the false

5   statement has to be made knowingly and intentionally or with

6   reckless disregard of the truth.  I understand Your Honor

7   said that it may have been negligent, but I think reckless

8   is a little bit different.  And I think that hearing --

9      **THE COURT:**  I would conclude it was reckless for

10  them to put in there something about what the cell site

11  information indicated when that was not correct; and also to

12  include that information about -- even though they may have

13  just been putting what their history was, I don't see how

14  anybody would perceive that you would -- that there was not

15  a correlation being made between guns and drugs, and

16  therefore 70 days later, it could be believed that the gun

17  would still be in his possession because he was involved in

18  drugs.

19      **MR. McWATERS:**  Your Honor, I understand what

20  you're saying.  I still think that hearing from someone, and

21  what their intention is in putting that down there, does

22  goes towards their recklessness.

23      **THE COURT:**  How does that change what -- when you

24  give me something as government counsel that has

25  representations from law enforcement officials on it, how

**1**   can I not rely upon that?

**2**   　　　　MR. McWATERS:  Because, Your Honor, I think the

**3**   standard -- the standard here and the issue is why those

**4**   things were put in there, and what the basis for putting

**5**   those statements in the warrant was.

**6**   　　　　THE COURT:  But that's irrelevant, because what's

**7**   relevant is what the judge saw and therefore acted based

**8**   upon what he or she saw, not what was in the mind of the

**9**   person who put those words on there.

**10**   　　　　MR. McWATERS:  So Your Honor, I guess that's where

**11**   I would respectfully disagree with you, is that the standard

**12**   is that the false statement has to be made knowingly --

**13**   　　　　THE COURT:  I don't mean to interrupt you, but you

**14**   could have -- and I'm not saying this is the case here, but

**15**   you could have a corrupt police officer -- I'm not saying

**16**   police officers are corrupt, but there are some, who puts

**17**   false information in the document.  The judge act on that,

**18**   and then that person comes in and says:  Well, that's not

**19**   what I meant; what I meant was something else, but that's

**20**   not what I put on the page.  That doesn't make sense to me.

**21**   　　　　MR. McWATERS:  Well, no, I understand, Your Honor,

**22**   and I think that's -- but I think that's why you have -- I

**23**   think in that situation, what you would have is you would

**24**   have the witness who would be subject to direct examination,

**25**   cross-examination, and then questioning by Your Honor if

1    possible, and that's how you would resolve that situation.

2    You wouldn't just make a decision that the person was

3    corrupt.  And again, I know you're not saying that it's

4    here, but there has to be some kind of investigation into

5    whether or not that statement was or was not made -- or why

6    that statement was made.  The standard here, again, is if

7    the false statement was made knowingly and intentionally --

8    which I think Your Honor would agree with me, if that was

9    what the case here was, the only way to determine that is

10   talking to the affiant.

11          And then "or with reckless disregard to the

12   truth."  And I think here, I just don't think that the

13   record has been developed enough for us to -- for Your Honor

14   to make that decision that the affiants were reckless in

15   their disregard for the truth.  I just don't think that that

16   standard has been met here, which is why I -- this is why --

17   I would just ask that you hold it in abeyance until the

18   suppression hearing and allow the witnesses to testify.  I

19   understand Your Honor's position on that, I just wanted to

20   say that one thing.

21          **THE COURT:**  Okay, I appreciate that.

22          **MR. McWATERS:**  With regard to the detention,

23   again, Your Honor, we -- detention was waived at the initial

24   appearance and arraignment here.  The government would ask

25   for -- traditionally we file a detention memorandum and have

1   a detention hearing on it.  So that's what -- and the

2   rules -- it's a little weird to be doing it at this stage.

3   I know at the initial appearance and arraignment stage,

4   usually the government has up to three days to ask for a

5   detention hearing and briefing on that.  The government

6   would ask for that here.

7           **THE COURT:**  Do you take exception to what defense

8   counsel represents regarding the gun and its location?

9           **MR. McWATERS:**  Meaning her representations as to

10  where the gun was found in the closet?

11          **THE COURT:**  Right.

12          **MR. McWATERS:**  The gun was found in the closet in

13  the room that Mr. Pannell was found in.  I will say that in

14  addition to the gun being in the closet, there was actually

15  loose ammunition also found in the room where he was, kind

16  of all over the place in that room.  And it was ammunition

17  that matched the same caliber -- some of the ammunition that

18  was found matched the same caliber of weapon that was in the

19  closet.  And those bullets/ammunition were not in the

20  closet, they were like -- there was a -- you only saw some

21  of the pictures, but there was a bed and there was a

22  dresser, and I think a desk -- or maybe just a dresser

23  that's right next to the bed.  And it was in some of the --

24  they were like boxes and baskets that were on that

25  dresser -- or bookcase, I guess.  And there were some

1    bullets that were found.  I believe that's where they were

2    found, was in that bookcase that was next to the bed.

3            **THE COURT:**  Anything else?  Thank you.

4            **MS. PETRAS:**  Only if the Court's making the

5    detention decision at all based on what the government

6    counsel just said about the ammunition, I can clarify.

7            **THE COURT:**  He's asking me to delay my ruling

8    until he could file something.  He's asking for three days

9    to do that.

10           **MS. PETRAS:**  If the Court --

11           **THE COURT:**  Do you have any response to that

12   request?

13           **MS. PETRAS:**  I'd ask the Court to release him now.

14   The evidence is overwhelming that the affidavit is not

15   sufficient, it's been suppressed.  And the evidence of the

16   gun is as I showed it.  The ammunition was recovered in the

17   closet.  There was some other ammunition that he's not

18   actually charged with.  But everything he was charged with

19   was in that closet.

20           **THE COURT:**  Very well.  I mean, I'm not

21   infallible, I could be wrong, you know, and the Court of

22   Appeals could see things differently.  I don't think that's

23   going to be the case.  As I've said, I just am not convinced

24   that what is in the minds of an officer is relevant as to

25   whether there was misleading information provided.  I just

1    think it's totally irresponsible for a law enforcement

2    officer to -- and I'm not saying that he did it

3    intentionally, but to say that the cell site information put

4    him at that apartment, which is what the warrant said,

5    that's not what the cell site information indicated.  So

6    you've got that misrepresentation.  Whether it was

7    intentional or not, it clearly, it seems to me, was at least

8    reckless.

9         And then you've got, like I say, the information

10   regarding drug activity and its relationship to guns.  And

11   considering what the affidavit said first about why the

12   search was being conducted -- i.e., to find a gun, and then

13   to have all this information about guns and drugs and why

14   people maintain guns when they're involved in drug activity,

15   I think the only implication that could be drawn from that

16   was that this case involved that type of situation, and

17   therefore 70 days later you could believe that he still

18   would have the gun.  Again, that was misleading.  Again,

19   whether that was intentional or not, it was reckless to

20   leave that in there and for that to be presented to the

21   judge as the predicate for the search.

22        I just don't see how anything the officers can say

23   would dissuade me from concluding that that information

24   should not have been in the affidavit, and it was reckless

25   for it to be there.  Because I think it did inevitably

1    mislead the judge, and therefore cause the judge to issue a
2    warrant that otherwise would not have been issued without
3    it.  So I don't see how I could be wrong.  If the Court of
4    Appeals sees it differently -- they may, but I think that's
5    a long shot.  Therefore, I think it would be inappropriate
6    for me -- especially with the other things defense counsel
7    brings out regarding the gun, despite the fact that it was
8    found in a bedroom where he may have been staying on some
9    occasions.  But considering the location of where it was
10   found and the circumstances under which it was found, I
11   think the government -- the defense is right, even if the
12   Court of Appeals did reverse the suppression, the issue -- I
13   think it would be a long shot that the government would be
14   able to get a conviction based upon this evidence.

15           So I'm going to order his release.  But I will
16   order that, sir, while you're on release -- and we'll bring
17   the case back about 30 days from now so the government can
18   have an opportunity to decide if it wants to appeal my
19   decision to the Court of Appeals.  But you cannot be
20   rearrested for any reason whatsoever until you get back
21   here.  Also, you cannot use any type of illegal drugs.  I'll
22   require that you be tested during your release to make sure
23   you're not using drugs.  I don't know if treatment is still
24   necessary, but if it's determined by the Pretrial Services
25   Agency that you need to be in some type of treatment

1    program, I'll require that you participate in that.  I

2    understand you're on some type of medication for your

3    addiction, and I assume you probably need to continue to do

4    that; that you take steps to make sure you have a

5    prescription in order to take that medication, and that you

6    take the medication while you're on release in this case.

7         So we'll continue the matter until January 28th

8    at --

9         **MS. PETRAS:**  I'm sorry, Your Honor, could we do it

10   a little earlier?  My daughter is expecting my first

11   grandchild on the 31st, and I think that's a little close.

12        **THE COURT:**  When is she expecting?

13        **MS. PETRAS:**  The 30th.  Could we do it the 21st,

14   the day that we had set for the trial?

15        **THE COURT:**  Yes, the 21st at 10:30, if that's

16   good?

17        **MR. McWATERS:**  That works for the government.

18        **MS. PETRAS:**  Yes, Your Honor.  Thank you.

19        **THE COURT:**  Very well.  Mr. Pannell, make sure you

20   comply with the conditions I've imposed.

21        **THE DEFENDANT:**  Yes, sir, I will.  Thank you.

22        (Proceedings adjourned at 12:10 p.m.)

23

24

25

1                       **C E R T I F I C A T E**

2

3              I, **Jeff M. Hook, Official Court Reporter,**

4       certify that the foregoing is a true and correct transcript

5       of the record of proceedings in the above-entitled matter.

6

7

8

9       <u>December 16, 2024</u>              _____

10              **DATE**                          **Jeff M. Hook**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEPUTY CLERK:**
**[1]**  2/2
**MR. McWATERS:**
**[43]**  2/6 8/17
8/22 9/4 9/10
9/14 9/19 10/5
10/11 11/6
11/15 11/25
12/2 12/9
12/16 13/17
14/2 14/10
14/18 15/21
16/3 18/6 31/9
31/22 31/25
33/7 33/17
33/24 34/10
34/16 35/4
35/13 35/17
36/7 38/3
38/19 39/2
39/10 39/21
40/22 41/9
41/12 45/17
**MS. PETRAS:**
**[19]**  2/8 2/14
2/23 3/9 5/5
6/6 6/18 12/6
14/15 20/2
21/12 27/15
36/25 42/4
42/10 42/13
45/9 45/13
45/18
**THE COURT:**
**[58]**
**THE DEFENDANT:**
**[1]**  45/21

**0**

**0329 [1]**  1/4

**1**

**10 [2]**  28/21
29/9
**10:00 a.m [1]**
22/24
**10:30 [1]**
45/15
**11:07 [1]**  1/6
**12:10 p.m [1]**
45/22
**13 [1]**  1/5
**13th [2]**  5/22
22/22
**14th [1]**  16/19
**15 [1]**  6/9
**15th [2]**  16/19

22/22
**16 [1]**  15/24
**16th [1]**  16/20
**17th [1]**  16/23
**18 [2]**  10/21
13/8
**1:24-cr-0329**
**[1]**  1/4

**2**

**2/13/24 [1]**
16/16
**20 [1]**  30/14
**20001 [1]**  1/25
**20004 [1]**  1/18
**2011 [2]**  30/14
30/15
**2017 [2]**  30/2
30/5
**2020 [1]**  30/15
**2022 [1]**  30/16
**2023 [2]**  4/2
14/25
**2024 [3]**  1/5
16/19 16/20
**20530 [1]**  1/14
**21st [2]**  45/13
45/15
**222 meters [2]**
6/14 23/3
**24 [1]**  16/16
**24-329 [1]**  2/2
**26th [5]**  4/2
5/18 14/21
14/21 19/12
**27-page [1]**
16/25
**27th [2]**  14/21
19/16
**28th [1]**  45/7
**2:00 p.m [1]**
22/24

**3**

**30 [2]**  27/13
44/17
**30 meters [1]**
23/2
**30th [1]**  45/13
**31st [1]**  45/11
**329 [1]**  2/2
**333 [1]**  1/24

**4**

**4700-C [1]**
1/24
**4th [1]**  23/1

**5**

**550 [1]**  1/17
**5625 [1]**  17/12
**5825 [2]**  16/15
17/13

**6**

**60 [2]**  19/16
19/23
**601 [1]**  1/13
**625 [1]**  1/17
**6th [1]**  22/22

**7**

**70 [13]**  8/12
10/3 11/3
13/12 13/25
17/23 18/3
18/7 18/12
20/6 25/4
38/16 43/17
**70-day [3]**
25/18 27/1
33/4

**A**

**a.m [2]**  1/6
22/24
**ABE [2]**  1/16
2/9
**abeyance [2]**
31/11 40/17
**able [1]**  44/14
**above [1]**  46/5
**above-entitled**
**[1]**  46/5
**abuse [1]**
23/21
**accurate [4]**
15/20 24/5
24/6 24/14
**accurately [1]**
35/2
**acquired [1]**
25/19
**acquiring [1]**
24/5
**act [1]**  39/17
**acted [1]**  39/7
**Action [1]**  1/3
**activity [21]**
8/6 8/25 9/15
10/1 11/1 11/5
13/12 13/15
24/23 24/25
25/2 25/3 25/9
25/9 25/17

26/21 33/5
43/10 43/14
**actual [4]**  9/1
13/21 17/9
31/11
**actually [15]**
5/20 16/24
17/6 18/16
21/18 27/6
28/4 28/7 31/1
35/13 36/7
36/18 37/5
41/14 42/18
**add [1]**  22/17
**addiction [4]**
27/23 28/2
30/21 45/3
**addition [4]**
4/11 8/2 24/20
41/14
**address [15]**
8/17 18/6
18/14 19/6
20/20 21/2
21/13 21/19
21/21 21/24
21/25 22/21
23/2 23/3
25/23
**adjourned [1]**
45/22
**adopting [1]**
23/15
**advised [1]**
35/2
**affiant [8]**
10/17 11/12
35/19 35/21
36/8 36/11
36/14 40/10
**affiant's [3]**
11/11 12/20
12/23
**affiants [1]**
40/14
**affidavit [42]**
2/15 2/16 2/16
3/1 4/1 4/22
4/23 7/19 7/19
7/21 8/5 8/16
9/17 10/9 17/6
17/18 19/13
22/10 23/4
24/10 24/17
24/22 25/25
31/24 32/4
32/15 32/16
32/18 34/6

34/12 34/20
34/21 35/1
35/5 35/15
36/15 36/21
37/12 37/13
42/14 43/11
43/24
**affidavits [1]**
36/18
**afield [1]**
15/6
**again [13]**
10/10 11/15
14/12 25/10
26/8 33/7 33/9
37/21 40/3
40/6 40/23
43/18 43/18
**against [1]**
8/19
**Agency [1]**
44/25
**agree [5]**  3/6
3/8 24/6 25/24
40/8
**ahold [1]**  28/1
**Alexandria [2]**
9/16 33/11
**Alfonso [1]**
29/17
**alleged [1]**
9/25
**allegedly [1]**
8/12
**allow [1]**
40/18
**almost [5]**  3/5
5/12 16/23
19/16 22/15
**along [1]**  2/9
**altering [1]**
30/24
**Amendment [4]**
23/9 23/17
26/14 26/16
**AMERICA [2]**
1/3 2/3
**ammunition [7]**
41/15 41/16
41/17 41/19
42/6 42/16
42/17
**amount [1]**
18/18
**analogy [1]**
13/3
**analysis [1]**
14/23

**A**

**anymore [2]**
7/23 18/25
**apartment [2]**
18/16 43/4
**appeal [7]**
27/11 27/14
29/19 29/20
31/6 37/17
44/18
**Appeals [5]**
37/21 42/22
44/4 44/12
44/19
**appear [1]**
27/21
**appearance [3]**
2/4 40/24 41/3
**APPEARANCES [1]**
1/11
**appreciate [3]**
10/12 24/1
40/21
**approach [1]**
2/4
**appropriate [1]**
23/20
**area [1]** 6/18
**argue [1]**
31/13
**argument [2]**
13/1 27/24
**arguments [2]**
19/25 28/7
**around [2]**
14/3 32/25
**arraignment [2]**
40/24 41/3
**arrested [3]**
3/19 3/23
30/22
**assessing [2]**
14/14 22/12
**assume [5]**
2/11 8/6 27/10
27/11 45/3
**assuming [1]**
13/23
**assure [1]**
25/12
**attach [1]**
20/11
**attachments [1]**
17/4
**authority [5]**
23/22 26/9
26/17 34/23

34/24
**authorization
[1]** 26/8
**authorize [1]**
37/17
**authorizes [1]**
26/15
**Ave [1]** 1/17
**Avenue [1]**
1/24

**B**

**back [9]** 3/10
14/24 15/8
15/13 27/13
29/10 29/20
44/17 44/20
**background [6]**
10/17 11/17
12/11 12/20
12/23 25/15
**Bankruptcy [1]**
1/23
**based [9]** 2/15
3/10 4/1 19/24
34/15 35/25
39/7 42/5
44/14
**basement [1]**
28/14
**basis [8]** 14/4
23/18 24/11
26/11 31/4
35/2 37/6 39/4
**baskets [1]**
41/24
**Beck [1]** 26/2
**becomes [1]**
24/2
**bed [3]** 41/21
41/23 42/2
**bedroom [1]**
44/8
**began [1]** 30/5
**beginning [1]**
2/5
**behalf [2]** 2/6
2/9
**behind [2]**
32/17 34/21
**belief [5]**
11/3 13/11
13/23 25/16
26/3
**believing [1]**
14/4
**belongings [1]**
5/10

**benefits [1]**
30/17
**best [2]** 5/18
5/19
**better [1]**
30/17
**beyond [1]**
26/14
**big [2]** 28/18
29/2
**bike [1]** 30/19
**bin [2]** 28/18
29/2
**bit [3]** 19/21
21/17 38/8
**block [1]** 6/20
**blocked [3]**
28/12 28/17
28/24
**blocking [1]**
29/2
**blue [2]** 5/15
16/16
**body [1]** 13/21
**bond [1]** 28/4
**bookcase [2]**
41/25 42/2
**BOP [1]** 30/1
**both [3]** 16/9
17/7 33/9
**bottle [1]**
29/16
**boxes [1]**
41/24
**Brattelli [16]**
15/24 17/10
18/8 18/11
18/15 18/23
18/25 19/5
19/11 19/17
31/17 32/8
33/10 33/11
34/1 36/19
**briefing [1]**
41/5
**bring [2]** 18/8
44/16
**brings [1]**
44/7
**broke [1]**
30/18
**brother's [1]**
29/17
**brought [4]**
8/3 8/19 27/19
31/16
**building [2]**
16/15 17/15

**bulk [1]** 13/18
**bullets [2]**
41/19 42/1
**bullets/ammunit
ion [1]** 41/19
**bunch [2]** 15/6
15/7
**business [1]**
30/7

**C**

**caliber [2]**
41/17 41/18
**came [3]** 27/17
27/24 30/25
**can [26]** 3/6
4/6 4/8 13/1
13/13 18/6
18/10 22/12
25/12 26/17
28/6 29/1 29/3
29/4 30/24
36/1 36/9
37/18 37/18
37/21 39/1
42/6 43/22
44/17
**careful [1]**
12/15
**cares [1]** 28/8
**carpenter [1]**
30/6
**case [27]** 8/14
8/18 10/24
24/25 25/1
26/3 26/14
26/25 27/18
27/22 29/18
29/21 29/22
30/23 31/6
33/6 34/23
34/24 36/4
36/10 36/16
39/14 40/9
42/23 43/16
44/17 45/6
**cases [2]**
25/14 34/24
**casing [2]**
14/20 14/22
**casings [1]**
15/7
**castle [1]**
26/8
**cause [11]** 9/3
9/8 13/18 21/7
22/3 22/7

22/13 26/11
31/20 37/17
44/1
**caused [1]**
26/1
**cell [26]** 2/21
4/20 4/21 4/23
5/13 5/15 8/3
10/7 10/13
15/15 15/18
17/7 19/10
20/8 21/17
22/11 24/7
24/21 26/24
27/5 32/11
32/13 32/23
38/10 43/3
43/5
**certainly [1]**
12/4
**certify [1]**
46/4
**challenge [1]**
27/17
**chambers [1]**
10/22
**change [7]**
31/18 31/21
31/23 33/15
35/12 37/18
38/23
**change what [1]**
38/23
**changes [4]**
32/20 34/8
34/10 36/3
**charged [7]**
3/11 3/12 3/22
15/10 28/15
42/18 42/18
**charges [1]**
8/19
**circles [1]**
16/17
**circuit [2]**
4/7 27/11
**circumstances
[2]** 35/3
44/10
**clarify [1]**
42/6
**clear [4]** 3/24
14/16 20/8
22/10
**clearly [1]**
43/7
**close [2]**
29/18 45/11

**C**

closed [1]
28/24

closer [1]   6/1

closet [18]
28/11 28/12
28/17 28/24
29/2 29/7 29/7
29/8 29/8
29/10 29/15
41/10 41/12
41/14 41/19
41/20 42/17
42/19

clothes [1]
28/18

Collaborative
[1]   30/5

collarbone [1]
30/18

color [1]   3/18

COLUMBIA [1]
1/1

combination [1]
4/18

coming [2]
15/25 22/24

company [3]
6/7 30/6 30/7

comparisons [1]
29/12

completed [3]
30/8 30/12
30/14

complex [1]
18/16

comply [1]
45/20

component [1]
23/10

conceivably [2]
17/20 25/22

conclude [5]
25/4 26/12
26/22 27/8
38/9

concluded [2]
18/3 23/17

concluding [1]
43/23

conclusion [1]
8/11

conditions [1]
45/20

conduct [1]
26/13

conducted [2]

8/23 43/12

confused [1]
9/5

conjunction [2]
13/2 17/16

connect [1]
16/4

connection [6]
3/23 4/2 4/4
5/7 8/8 37/6

consider [2]
27/16 31/7

considered [1]
25/14

considering [2]
43/11 44/9

consistent [1]
35/10

Constitution
[2]   1/24
23/10

constitutional
[1]   24/3

Construction
[1]   30/6

contacted [2]
19/13 19/17

continue [2]
45/3 45/7

continued [1]
30/16

convicted [1]
3/22

conviction [4]
29/21 30/2
30/9 44/14

convinced [1]
42/23

convincing [1]
24/15

copy [2]   10/11
10/13

correlation [2]
25/3 38/15

corrupt [3]
39/15 39/16
40/3

cost [1]   23/19

counsel [10]
2/4 3/14 3/15
8/3 13/1 20/9
38/24 41/8
42/6 44/6

couple [8]
15/22 16/20
17/11 20/2
27/16 27/18
31/9 31/25

coupled [1]
26/24

course [4]
4/23 17/10
21/5 32/5

court [35]   1/1
1/22 1/23 2/18
10/22 18/9
19/19 20/13
21/1 22/12
23/8 23/14
23/15 24/19
27/15 27/19
28/8 28/10
30/24 31/7
31/10 31/11
31/14 31/15
32/16 36/13
36/13 37/21
42/10 42/13
42/21 44/3
44/12 44/19
46/3

Court's [4]
3/18 14/16
32/7 42/4

Courts [1]
1/23

covered [2]
6/2 6/18

cr [1]   1/4

credence [1]
24/20

crime [2]   7/3
11/21

criminal [4]
1/3 2/2 23/24
26/21

critical [3]
3/9 7/1 23/10

cross [1]
39/25

cross-examinati
on [1]   39/25

**D**

D.C [4]   1/13
1/17 21/17
28/2

daily [1]
24/10

data [20]   4/15
4/16 4/20 4/22
4/23 5/13 6/19
6/23 6/23 16/6
17/7 20/8
21/17 22/11
22/15 32/11

32/14 33/20
33/25 37/5

date [3]   27/10
27/12 46/10

dates [1]   7/7

daughter [1]
45/10

day [11]   3/5
6/24 6/25 7/8
7/10 12/17
22/16 25/18
27/1 33/4
45/14

days [22]   5/17
8/12 10/3 11/3
13/13 13/25
17/23 18/3
18/7 18/12
19/16 19/23
20/6 20/24
22/25 25/4
27/13 38/16
41/4 42/8
43/17 44/17

DC [4]   1/5
1/14 1/18 1/25

dealing [1]
12/4

December [7]
1/5 4/2 5/18
14/21 14/21
19/12 22/5

December 26th
[4]   4/2 5/18
14/21 19/12

December 27th
[1]   14/21

decide [1]
44/18

decided [2]
27/14 34/7

deciding [1]
37/16

decision [4]
40/2 40/14
42/5 44/19

defendant [4]
1/7 1/16 25/1
25/5

defendant's [1]
27/3

defense [9]
2/11 8/3 12/4
15/16 24/7
24/16 41/7
44/6 44/11

defer [1]
37/24

delay [1]   42/7

department [3]
11/11 13/7
33/12

desirous [1]
2/11

desk [1]   41/22

despite [3]
23/19 26/12
44/7

detain [1]
31/3

detective [23]
15/4 15/24
18/8 18/11
18/15 18/23
18/25 19/4
19/11 19/17
21/10 25/12
31/16 32/8
33/10 33/10
33/11 34/1
34/17 34/19
35/6 36/18
36/19

detective's [2]
17/17 24/24

detectives [2]
35/11 36/2

detention [7]
27/18 40/22
40/23 40/25
41/1 41/5 42/5

determination
[6]   18/25
22/6 31/20
32/7 35/17
36/22

determine [2]
21/5 40/9

determined [8]
7/23 18/24
19/6 20/20
21/10 21/12
21/19 44/24

developed [1]
40/13

difference [5]
14/12 30/22
30/24 30/25
34/4

different [3]
16/5 37/22
38/8

differently [2]
42/22 44/4

direct [1]
39/24

**D**

**directly [2]**
4/13 16/24
**dirt [1]** 30/19
**disagree [2]**
23/14 39/11
**disagrees [1]**
32/13
**discover [1]**
19/8
**discussing [2]**
10/16 10/17
**discussion [3]**
10/16 11/20
12/20
**disregard [6]**
37/1 37/4 37/9
38/6 40/11
40/15
**dissuade [1]**
43/23
**distance [1]**
6/12
**distribution [7]** 8/7 8/9
9/23 9/25
13/12 25/2
25/17
**DISTRICT [4]**
1/1 1/1 1/10
1/23
**Dix [5]** 16/15
17/12 17/13
22/20 22/21
**DNA [6]** 29/11
29/11 29/13
29/14 29/14
29/15
**dockets [1]**
21/1
**document [4]**
32/21 36/6
37/15 39/17
**done [2]** 14/23
21/15
**door [3]** 6/19
6/21 28/24
**dot [3]** 5/14
5/15 5/15
**dots [4]** 16/16
16/22 20/10
20/11
**down [3]** 3/17
29/20 38/21
**downfall [1]**
30/20
**draft [1]** 28/8

**drafted [2]**
15/17 33/18
**drafters [1]**
37/11
**draw [1]** 25/3
**drawing [1]**
13/3
**drawn [1]**
43/15
**dresser [3]**
41/22 41/22
41/25
**driver's [1]**
21/2
**drivering [1]**
21/3
**drug [20]** 8/5
8/19 8/25 9/14
9/25 11/5
11/21 13/5
13/11 13/15
18/2 20/4
24/23 24/25
25/2 25/17
33/5 37/5
43/10 43/14
**drugs [20]** 8/7
8/8 8/9 8/13
8/20 9/1 9/7
9/23 11/1
12/21 13/20
25/7 26/4
26/25 28/15
38/15 38/18
43/13 44/21
44/23
**due [1]** 12/25
**during [5]** 7/9
11/10 17/10
27/6 44/22

**E**

**e-mail [2]** 6/9
6/11
**earlier [3]**
14/25 20/25
45/10
**either [3]**
5/25 10/1 37/6
**elapsed [2]**
25/18 27/1
**Elmo [2]** 2/25
28/23
**else [6]** 3/21
7/9 20/1 28/16
39/19 42/3
**employment [1]**
30/8

**empty [3]**
28/22 28/22
28/22
**end [1]** 15/23
**enforced [2]**
23/17 26/16
**enforcement [5]**
23/13 23/21
26/17 38/25
43/1
**engaged [1]**
11/13
**enough [6]** 7/2
7/11 22/1 23/7
37/9 40/13
**entertaining [1]** 2/11
**entire [1]**
27/6
**entitled [1]**
46/5
**entry [1]**
14/14
**especially [1]**
44/6
**even [12]** 3/22
13/12 20/20
21/12 21/14
25/18 26/4
27/1 28/10
29/18 38/12
44/11
**event [2]** 10/3
17/23
**evidence [26]**
7/3 7/13 8/14
9/24 15/11
15/14 17/24
20/4 23/20
24/9 24/15
25/1 26/15
26/20 26/24
27/5 28/9 28/9
28/10 31/4
31/6 31/20
33/6 42/14
42/15 44/14
**exact [1]**
18/18
**exactly [3]**
9/5 11/7 21/13
**examination [2]**
39/24 39/25
**except [1]**
4/24
**exception [1]**
41/7
**excluded [1]**

19/7
**exclusionary [1]** 23/16
**executed [2]**
4/4 27/20
**execution [1]**
4/11
**exhibit [2]**
16/13 17/1
**exhibits [2]**
16/9 17/4
**expecting [2]**
45/10 45/12
**expensive [1]**
14/3
**experience [3]**
11/1 12/23
24/24
**expert [9]**
2/11 2/17 6/1
16/5 16/9
16/14 17/2
20/13 31/14
**explain [4]**
5/21 6/2 20/13
21/14
**explained [1]**
7/10
**explaining [1]**
7/14
**explains [1]**
23/5
**expressed [1]**
37/11

**F**

**fact [17]** 5/12
7/1 7/25 9/1
9/7 9/7 10/25
15/12 15/18
15/20 18/14
21/10 24/17
33/3 35/5 36/4
44/7
**factoring [1]**
22/1
**facts [2]**
34/12 37/2
**failed [1]**
27/21
**failure [1]**
24/16
**fair [3]** 14/10
16/21 17/18
**fairly [1]**
19/11
**faith [1]**
26/10

**false [13]**
2/15 2/17 3/25
4/13 6/25 6/25
7/15 20/7
22/11 38/4
39/12 39/17
40/7
**familiar [1]**
34/25
**far [3]** 15/6
28/25 29/1
**fast [2]** 14/13
30/10
**February [8]**
5/22 16/19
16/19 16/20
19/15 19/15
19/16 22/22
**February 13th [1]** 5/22
**February 14th [1]** 16/19
**February 15th [1]** 16/19
**February 27th [1]** 19/16
**February 6th [1]** 22/22
**feel [1]** 12/19
**felony [1]**
30/1
**felt [1]** 10/24
**female [2]**
29/11 29/14
**figure [1]**
19/8
**file [2]** 40/25
42/8
**filed [2]** 7/18
7/19
**filing [1]**
28/4
**final [1]**
32/17
**finalizing [1]**
37/24
**finally [1]**
28/19
**find [11]** 9/6
9/11 10/10
18/13 23/6
24/15 24/20
26/20 29/10
36/13 43/12
**firearm [4]**
11/13 11/21
13/2 14/24
**firearms [2]**

**F**

firearms... [2]
  14/23 15/6
first [12]
  8/18 9/3 16/6
  17/2 19/14
  20/3 27/17
  28/25 31/10
  32/4 43/11
  45/10
five [1]    3/20
following [1]
  11/12
food [1]    30/10
foregoing [1]
  46/4
forth [1]
  17/23
forward [1]
  19/23
found [20]
  8/20 9/1 14/11
  23/1 26/6 27/3
  28/11 30/7
  30/17 33/2
  41/10 41/12
  41/13 41/15
  41/18 42/1
  42/2 44/8
  44/10 44/10
four [2]    10/15
  20/3
fourth [5]
  20/19 23/9
  23/17 26/14
  26/16
FPD [1]    1/17
FPD-D.C [1]
  1/17
frankly [1]
  28/1
full [3]    7/11
  29/15 31/15
fully [1]    7/13
furtherance [1]
  11/21

**G**

GEORGE [3]    1/6
  2/3 30/17
girlfriend [7]
  7/20 7/25
  17/25 21/3
  21/20 24/18
  28/5
given [2]    26/9
  26/13
goes [5]    4/13

26/14 33/18
33/18 38/22
good [5]    2/7
  2/8 2/10 26/10
  45/16
Google [1]
  3/20
got involved
  [1]    11/9
government [35]
  1/12 2/5 3/14
  3/15 3/21 7/5
  7/22 8/2 15/14
  16/5 16/8 17/4
  19/22 20/9
  27/11 27/13
  31/5 31/8
  31/10 31/12
  31/16 32/12
  33/9 37/8
  37/21 38/1
  38/24 40/24
  41/4 41/5 42/5
  44/11 44/13
  44/17 45/17
government's
  [2]    29/19
  32/19
grandchild [1]
  45/11
grateful [1]
  31/2
green [1]    5/15
grow [1]    20/17
guess [8]    2/19
  9/4 15/21
  17/24 27/12
  31/5 39/10
  41/25
gun [43]    3/15
  3/17 4/5 8/10
  8/11 9/11 11/1
  11/5 13/4
  13/14 13/14
  13/20 14/1
  14/11 14/11
  14/17 14/19
  15/7 15/12
  18/4 19/24
  21/7 22/3 25/7
  25/8 25/21
  25/22 26/6
  27/2 27/8
  28/10 29/10
  29/10 37/25
  38/16 41/8
  41/10 41/12
  41/14 42/16

43/12 43/18
44/7
guns [14]    8/8
  9/23 14/2 14/5
  14/7 14/8 15/8
  17/22 17/23
  25/3 38/15
  43/10 43/13
  43/14

**H**

half [4]    5/23
  10/21 13/8
  29/13
halfway [1]
  30/4
handing [1]
  10/12
handsed [1]
  33/10
happened [1]
  4/2
happens [1]
  29/24
head [1]    18/19
hear [5]    32/1
  32/3 33/8
  34/17 34/18
hearing [17]
  1/9 14/17 15/1
  15/2 18/9
  31/12 31/13
  31/15 32/15
  33/12 36/17
  37/20 38/8
  38/20 40/18
  41/1 41/5
help [1]    32/16
highlighted [1]
  3/2
himself [2]
  13/15 25/8
historical [6]
  3/4 6/23 16/6
  17/7 19/10
  22/14
history [1]
  38/13
hold [2]    31/11
  40/17
homicide [6]
  14/25 15/4
  15/7 15/11
  15/12 15/13
honest [1]
  11/6
Honor [50]
Honor's [3]

10/14 32/13
40/19
HONORABLE [1]
  1/9
HOOK [3]    1/22
  46/3 46/10
hospital [1]
  30/19
hours [1]
  22/23
house [43]    4/3
  4/5 4/6 5/14
  6/14 6/17 6/19
  6/21 6/21 6/22
  6/24 7/3 7/4
  7/7 7/8 7/9
  8/20 8/21 8/21
  9/2 9/3 10/6
  10/9 10/13
  12/15 16/24
  17/9 17/21
  20/10 20/16
  20/18 21/16
  24/8 24/11
  24/12 24/12
  24/13 24/14
  25/22 26/7
  27/4 28/14
  30/4
hypothetically
  [1]    13/24

**I**

i.e [1]    43/12
ID [3]    21/3
  21/18 23/6
identical [2]
  4/22 4/24
identified [2]
  14/9 15/18
identify [1]
  3/7
illegal [2]
  11/13 44/21
images [1]
  16/11
imagine [2]
  29/19 29/21
impact [2]
  2/12 12/22
implication [2]
  5/5 43/15
implies [1]
  35/20
important [6]
  24/3 33/8
  33/22 33/25
  34/16 34/18

imposed [1]
  45/20
impression [1]
  26/25
in 20 [1]
  30/14
inappropriate
  [1]    44/5
incident [1]
  5/7
include [2]
  24/16 38/12
included [3]
  16/8 16/12
  17/4
includes [3]
  6/19 6/20 6/20
incorrect [3]
  24/21 25/25
  26/18
Indiana [1]
  1/17
indicate [1]
  24/9
indicated [6]
  24/10 32/24
  32/25 37/23
  38/11 43/5
indicted [1]
  27/22
inevitably [1]
  43/25
infallible [1]
  42/21
inferred [1]
  17/20
information
  [32]    2/22 8/4
  8/5 8/15 15/15
  15/19 18/2
  20/22 22/17
  24/4 24/5 24/7
  24/21 24/21
  24/23 25/15
  26/1 26/18
  26/23 31/18
  32/9 32/14
  32/23 38/11
  38/12 39/17
  42/25 43/3
  43/5 43/9
  43/13 43/23
initial [3]
  40/23 41/3
instance [1]
  9/3
instances [2]
  17/8 17/9

**I**

**intend [2]**
15/14 36/5
**intended [1]**
20/12
**intention [2]**
36/8 38/21
**intentional [7]**
10/2 32/23
35/24 35/25
36/25 43/7
43/19
**intentionality
[2]** 35/21
36/12
**intentionally
[6]** 36/4 36/5
36/14 38/5
40/7 43/3
**interrupt [1]**
39/13
**into [7]** 4/17
12/12 13/19
23/22 26/8
35/15 40/4
**introduce [2]**
15/11 15/14
**invading [1]**
12/15
**invasion [3]**
23/12 23/12
26/19
**investigated
[1]** 18/24
**investigation
[11]** 9/15
9/16 10/18
11/8 11/18
13/19 13/22
17/10 23/24
24/24 40/4
**investigations
[1]** 12/12
**investigative
[1]** 12/20
**involved [20]**
8/6 8/9 9/22
11/5 11/8 11/9
13/11 13/24
14/9 14/24
15/6 20/5 25/2
25/6 25/9
25/17 26/25
38/17 43/14
43/16
**involvement [5]**
8/13 9/25

12/12 25/7
33/5
**irrelevant [4]**
11/2 15/13
20/4 39/6
**irresponsible
[1]** 43/1
**is why [1]**
40/16
**issue [9]** 2/20
4/13 12/3 12/3
12/17 18/7
39/3 44/1
44/12
**issued [5]**
24/2 26/2
26/13 26/23
44/2
**issuing [1]**
26/19
**items [2]** 14/3
30/11

**J**

**jail [2]** 28/2
29/23
**jam [1]** 28/20
**jam-packed [1]**
28/20
**January [1]**
45/7
**January 28th
[1]** 45/7
**JEFF [3]** 1/22
46/3 46/10
**job [2]** 30/12
30/17
**journeyman [1]**
30/6
**judge [38]**
1/10 2/24 4/17
6/23 7/11 7/16
10/22 12/18
14/13 18/1
20/23 23/5
24/4 26/1 26/2
26/9 26/19
27/2 33/22
34/5 34/6 34/9
34/11 34/15
35/2 35/8 35/8
35/22 35/25
36/5 36/23
37/15 37/19
39/7 39/17
43/21 44/1
44/1
**July [1]** 14/25

**June [1]** 14/25
**justification
[2]** 2/21
37/24
**justified [1]**
14/14
**justify [3]**
8/11 8/15
26/19
**justifying [1]**
10/3

**K**

**keep [2]** 14/3
14/5
**kind [7]** 12/11
15/5 15/13
16/5 31/2 40/4
41/15
**kinds [1]**
28/21
**knew [2]** 17/11
17/11
**knowingly [3]**
38/5 39/12
40/7
**knows [1]**
29/15
**KYLE [2]** 1/12
2/6

**L**

**landscape [1]**
36/3
**lapse [2]** 26/5
33/4
**laptop [1]**
16/4
**last [7]** 3/13
14/17 15/1
15/2 19/15
30/1 38/4
**later [4]** 5/18
30/18 38/16
43/17
**latitude [2]**
6/11 6/13
**law [7]** 4/7
23/13 23/21
26/17 36/10
38/25 43/1
**lawful [1]**
24/3
**leap [1]** 6/3
**learned [1]**
11/12
**least [3]** 11/3
17/21 43/7

**leave [1]**
43/20
**leaving [1]**
7/18
**lecturn [1]**
2/4
**led [1]** 30/21
**legitimate [3]**
2/21 23/12
23/13
**length [1]**
4/10
**level [1]**
36/11
**life [1]** 30/24
**life-altering
[1]** 30/24
**list [1]** 7/7
**listening [2]**
36/17 36/18
**literally [2]**
28/20 29/5
**little [10]**
3/1 6/1 9/4
19/21 21/17
31/6 38/8 41/2
45/10 45/11
**live [5]** 7/23
18/24 28/6
28/6 37/22
**lived [2]** 21/3
21/20
**lives [3]** 7/17
22/2 22/20
**living [5]**
4/14 4/18 5/6
8/1 32/24
**locate [1]**
19/5
**located [1]**
25/22
**location [12]**
3/3 3/8 5/11
6/10 6/12 18/5
20/15 27/4
32/25 33/1
41/8 44/9
**locations [1]**
23/1
**long [5]** 4/11
18/12 19/5
44/5 44/13
**longitude [2]**
6/11 6/13
**look [6]** 11/18
17/3 17/5
22/10 34/25
37/7

**looked [7]**
9/21 11/2
32/18 34/1
34/9 34/11
35/10
**looking [6]**
3/2 5/8 10/23
20/21 20/23
35/9
**loose [1]**
41/15
**lot [2]** 12/10
26/1

**M**

**magistrate [1]**
24/4
**mail [2]** 6/9
6/11
**maintain [1]**
43/14
**makes [1]** 4/14
**making [1]**
42/4
**many [2]** 15/8
16/22
**March [2]** 23/1
27/19
**March 4th [1]**
23/1
**MARY [2]** 1/16
2/8
**Mason [1]**
30/17
**match [3]** 3/16
14/17 14/19
**matched [3]**
3/17 41/17
41/18
**matter [6]** 2/2
18/14 37/1
37/6 45/7 46/5
**matters [3]**
4/1 34/21 37/2
**mattress [2]**
28/19 29/4
**may [9]** 2/3
11/4 24/11
27/11 34/2
38/7 38/12
44/4 44/8
**maybe [1]**
41/22
**McWATERS [2]**
1/12 2/6
**mean [16]** 9/6
10/21 12/1
14/4 15/5 18/1

**M**

**mean... [10]**
20/14 20/18
25/12 32/12
32/18 33/8
34/18 36/9
39/13 42/20
**meaning [2]**
35/21 41/9
**means [3]**
20/13 20/14
23/16
**meant [2]**
39/19 39/19
**medication [3]**
45/2 45/5 45/6
**memorandum [1]**
40/25
**mention [1]**
13/20
**met [2]**    30/25
40/16
**meters [4]**
6/12 6/14 23/2
23/3
**Metropolitan**
**[1]**    11/11
**middle [2]**    7/8
7/10
**might [6]**    12/2
12/17 14/10
16/4 22/3 38/3
**mind [5]**    33/23
34/1 34/5 35/7
39/8
**minds [4]**
35/11 36/1
36/20 42/24
**mindset [1]**
37/14
**minutes [4]**
3/20 6/9 28/21
29/9
**mislead [5]**
24/19 35/22
36/5 36/23
44/1
**misleading [15]**
12/1 15/17
17/6 25/25
26/18 26/23
26/24 34/12
34/14 35/5
35/14 35/18
35/20 42/25
43/18
**misled [2]**

**misrepresentati**
**on [1]**    43/6
**misrepresented**
**[2]**    27/5
32/22
**misrepresenting**
**[2]**    7/1 7/13
**missed [1]**
9/20
**misstate [1]**
29/25
**mistaken [1]**
17/18
**moment [3]**
2/25 3/11 6/8
**month [2]**    5/22
22/22
**months [2]**
18/19 28/4
**more [7]**    3/1
12/15 17/1
22/22 29/9
29/9 29/9
**morning [3]**
2/7 2/8 2/10
**most [2]**    11/22
33/2
**mother [5]**    7/9
8/1 22/20
22/25 29/14
**mother's [21]**
3/4 4/3 4/5
5/3 5/14 6/14
6/21 6/22 6/24
7/9 17/12
17/21 20/10
20/18 21/16
22/15 24/8
25/21 26/7
27/4 28/13
**motion [6]**    1/9
12/5 20/12
28/5 28/8
36/11
**motions [1]**
31/13
**move [1]**    22/4
**moved [6]**    2/15
15/11 21/24
28/18 29/2
29/3
**MPD [3]**    19/13
19/17 32/3
**Mr. [39]**    2/9
3/4 3/11 3/18
3/19 3/22 4/3
4/5 4/14 8/19

4/16 36/13
8/20 11/20
13/20 15/3
15/10 15/25
16/18 17/8
17/10 17/12
18/13 18/15
18/17 18/19
19/2 19/5 19/7
19/24 20/5
22/15 27/16
27/17 28/13
29/13 30/25
32/10 34/2
41/13 45/19
**Mr. Brattelli**
**[1]**    17/10
**Mr. Pannell**
**[31]**    2/9 3/4
3/11 3/18 3/19
3/22 4/14 8/19
15/3 15/10
15/25 17/8
18/13 18/15
18/17 18/19
19/2 19/5 19/7
19/24 20/5
22/15 27/16
27/17 28/13
29/13 30/25
32/10 34/2
41/13 45/19
**Mr. Pannell's**
**[7]**    4/3 4/5
8/20 11/20
13/20 16/18
17/12
**Ms. [7]**    10/12
15/1 15/22
16/4 16/10
17/1 38/4
**Ms. Pannell [1]**
17/1
**Ms. Petras [6]**
10/12 15/1
15/22 16/4
16/10 38/4
**much [1]**    26/15
**multiple [2]**
16/1 17/15
**murder [1]**
3/17

**N**

**name [2]**    29/17
29/17
**narcotics [2]**
10/15 11/14
**nearly [4]**

4/22 4/24 5/22
6/24
**necessary [1]**
44/24
**need [8]**    8/9
11/24 12/14
13/14 25/8
37/20 44/25
45/3
**needed [1]**
30/11
**needs [1]**    13/7
**neglect [1]**
25/11
**negligent [2]**
35/24 38/7
**neighbored [1]**
20/17
**neighborhood**
**[5]**    5/19 6/3
6/4 20/16
20/18
**new [2]**    30/7
30/17
**next [8]**    5/20
6/19 6/21 18/9
31/12 33/13
41/23 42/2
**NIAM [2]**    1/6
2/3
**night [5]**    3/5
5/11 5/12 5/17
22/16
**non [1]**    21/3
**non-drivering**
**[1]**    21/3
**nonetheless [2]**
26/5 27/2
**normal [1]**
32/5
**normally [1]**
14/3
**noticed [1]**
33/12
**number [7]**
10/22 17/13
17/13 17/14
19/9 25/13
25/13
**NW [3]**    1/13
1/17 1/24

**O**

**object [1]**
12/6
**observations**
**[1]**    34/14
**obviously [8]**

19/17 23/10
23/16 28/9
29/13 31/14
32/12 37/22
**occasions [4]**
16/1 16/2
17/21 44/9
**occur [2]**
23/18 26/10
**occurred [2]**
22/5 30/13
**off [6]**    4/17
5/16 16/18
18/1 18/19
23/7
**offense [4]**
3/5 22/16
30/13 30/14
**offenses [1]**
30/15
**office [1]**
11/8
**officer [5]**
7/6 21/23
39/15 42/24
43/2
**officer to [1]**
43/2
**officers [5]**
11/22 12/10
17/17 39/16
43/22
**Official [2]**
1/23 46/3
**officials [1]**
38/25
**omission [4]**
2/16 4/19 4/19
20/19
**omitted [1]**
19/1
**once [2]**    16/18
24/1
**one [21]**    3/11
4/24 7/5 15/8
15/22 16/6
16/11 16/12
17/11 17/13
17/14 20/3
22/9 27/18
29/12 31/1
31/3 32/1 32/8
38/3 40/20
**only [15]**    3/7
4/6 5/6 5/23
5/23 9/6 14/16
17/15 22/12
34/6 35/25

**O**

only... **[4]**  40/9 41/20 42/4 43/15
open **[3]**  28/18 28/19 28/25
opened **[3]**  28/25 29/1 29/3
operate **[1]**  35/25
opioid **[1]**  27/23
opioids **[1]**  30/20
opportunity **[1]**  44/18
opposed **[1]**  10/17
opposition **[1]**  16/9
options **[1]**  27/25
order **[8]**  13/14 22/9 23/21 31/11 36/12 44/15 44/16 45/5
originally **[2]**  27/19 30/22
otherwise **[3]**  10/25 23/23 44/2
out **[37]**  4/25 7/5 7/21 8/3 10/4 11/7 12/10 12/19 13/24 15/22 16/1 17/14 17/25 18/22 19/2 19/8 19/19 21/24 22/14 22/17 22/19 22/24 24/18 25/5 28/22 28/22 28/22 29/7 29/7 29/8 29/8 30/7 32/2 32/5 44/7
over **[3]**  10/21 13/8 41/16
overwhelming **[1]**  42/14
own **[1]**  37/8

**P**

p.m **[2]**  22/24 45/22
packed **[1]**  28/20
page **[2]**  16/25 39/20
pages **[2]**  29/5 29/5
PANNELL **[34]**  1/6 2/3 2/9 3/4 3/11 3/18 3/19 3/22 4/14 8/19 15/3 15/10 15/25 17/1 17/8 18/13 18/15 18/17 18/19 19/2 19/5 19/7 19/24 20/5 22/15 27/16 27/17 28/13 29/13 30/25 32/10 34/2 41/13 45/19
Pannell's **[8]**  4/3 4/5 8/20 11/20 13/20 16/18 17/12 29/17
paragraph **[3]**  10/14 15/23 15/23
part **[8]**  4/24 10/1 11/3 11/19 19/4 25/11 32/4 32/5
participate **[1]**  45/1
particular **[5]**  4/9 8/18 15/18 22/8 22/8
particularly **[2]**  4/18 16/23
PD's **[1]**  9/16
people **[12]**  8/8 9/22 14/3 14/4 14/7 20/17 23/11 26/9 28/2 28/16 29/23 43/14
people's **[1]**  29/11
perceive **[2]**

perhaps **[1]**  21/23
period **[3]**  25/18 27/1 27/7
perplexed **[1]**  2/19
person **[6]**  7/2 21/16 36/17 39/9 39/18 40/2
person's **[1]**  6/8
personal **[1]**  23/23
personally **[1]**  19/22
persons **[1]**  11/13
perspectives **[1]**  37/11
PETRAS **[8]**  1/16 2/9 10/12 15/1 15/22 16/4 16/10 38/4
phone **[15]**  4/20 4/21 4/23 5/14 5/15 5/16 6/7 6/8 6/10 6/10 16/18 19/9 20/8 21/18 22/11
phrased **[1]**  37/12
picked **[1]**  27/21
pictures **[2]**  28/11 41/21
pill **[1]**  29/16
ping **[3]**  6/5 6/6 6/7
pinged **[1]**  6/10
pinging **[2]**  5/16 16/18
pings **[12]**  5/21 5/22 5/24 5/24 5/25 6/2 16/8 16/17 16/23 17/8 17/16 34/1
place **[13]**  3/4 5/25 6/16 6/24 10/4 15/19 17/8 19/2 19/7 20/16 22/15

placed **[3]**  8/15 24/8 24/11
period **[3]** places **[1]**  23/11
Plaintiff **[1]**  1/4
planned **[1]**  28/4
pleading **[1]**  37/8
point **[4]**  8/17 14/16 15/22 24/17
points **[1]**  7/5
police **[11]**  2/21 6/6 11/11 13/6 16/6 21/19 23/12 25/16 33/12 39/15 39/16
position **[7]**  15/16 20/9 24/16 32/13 32/19 38/1 40/19
possesses **[1]**  13/4
possession **[9]**  8/13 11/4 11/13 13/3 13/20 25/7 25/21 27/3 38/17
possible **[3]**  9/20 33/21 40/1
Possinger **[6]**  32/2 32/3 32/9 33/10 36/19 36/19
Possinger and **[1]**  36/19
potential **[3]**  11/20 19/2 19/7
precise **[1]**  3/7
predicate **[5]**  2/22 8/25 11/3 31/19 43/21
premise **[1]**  9/11
prepared **[3]**  27/24 31/12 33/9
preparing **[1]**

placed **[3]** 25/4 41/16
10/10
prescribed **[1]**  30/20
prescription **[2]**  29/16 45/5
present **[3]**  20/12 26/18 36/12
presented **[2]**  2/24 43/20
presumption **[1]**  26/12
presumptively **[1]**  24/2
Pretrial **[1]**  44/24
pretty **[1]**  30/3
primarily **[1]**  16/22
prior **[3]**  8/25 21/11 30/9
probable **[10]**  9/2 9/8 13/18 21/7 22/3 22/7 22/13 26/11 31/20 37/17
probably **[1]**  45/3
problem **[3]**  4/9 7/12 20/19
problems **[1]**  20/3
proceedings **[2]**  45/22 46/5
product **[2]**  8/11 32/17
program **[1]**  45/1
propriety **[1]**  2/13
protect **[6]**  8/10 8/10 13/14 23/11 25/8 25/9
provided **[4]**  16/4 24/4 31/19 42/25
provides **[1]**  35/1
proximity **[1]**  24/8
pull **[1]**  30/11
purpose **[3]**  10/2 24/5 26/20
purposely **[1]**

**P**

**purposely...**
**[1]** 37/3
**put [28]** 3/7
5/11 12/12
19/22 21/9
28/3 32/4
32/15 33/15
33/19 34/8
34/20 35/8
35/15 35/19
35/21 36/2
36/8 36/10
36/14 36/18
36/20 37/12
38/10 39/4
39/9 39/20
43/3
**puts [1]** 39/16
**putting [5]**
28/5 34/21
38/13 38/21
39/4

**Q**

**quickly [3]**
19/12 19/12
30/7

**R**

**raise [1]** 12/8
**raised [2]**
12/4 12/7
**range [2]** 3/7
16/21
**read [2]** 10/9
13/16
**reading [3]**
11/16 12/18
12/22
**ready [2]**
12/11 33/11
**real [1]** 24/19
**reality [1]**
35/11
**really [4]**
7/14 12/21
18/13 30/23
**realtime [16]**
3/3 5/20 5/22
5/24 5/24 5/25
6/2 6/5 6/6
6/23 16/7
16/17 16/19
17/8 17/16
22/14
**rearrested [1]**
44/20

**reason [9]** 5/9
11/18 18/12
19/2 19/20
21/9 25/16
31/3 44/20
**reasonably [2]**
17/20 25/20
**reasons [3]**
23/13 27/18
29/22
**recall [1]**
9/19
**received [1]**
10/11
**reckless [12]**
10/1 37/1 37/4
37/8 38/6 38/7
38/9 40/11
40/14 43/8
43/19 43/24
**recklessness**
**[2]** 25/11
38/22
**recognized [1]**
37/8
**record [5]** 2/5
3/14 28/15
40/13 46/5
**record's [1]**
14/15
**records [1]**
3/4
**recovered [8]**
14/11 14/13
14/20 14/22
15/7 16/7 27/8
42/16
**red [1]** 5/14
**reference [5]**
2/10 9/14
11/12 11/19
23/24
**regard [7]**
18/13 20/7
21/17 22/11
22/17 31/13
40/22
**regarding [20]**
8/3 8/5 9/25
11/1 11/20
17/22 23/15
23/24 24/16
24/21 24/24
26/21 26/24
32/3 32/9
37/24 38/1
41/8 43/10
44/7

**regardless [1]**
33/3
**REGGIE [1]** 1/9
**related [3]**
9/12 15/10
23/13
**relation [1]**
32/14
**relationship**
**[1]** 43/10
**release [8]**
28/8 30/13
38/2 42/13
44/15 44/16
44/22 45/6
**released [5]**
27/20 27/25
29/24 30/1
30/4
**releasing [2]**
27/16 31/7
**relevance [1]**
10/24
**relevant [14]**
2/20 7/24 9/2
9/8 10/20 22/6
24/25 32/7
36/9 36/21
37/14 37/15
39/7 42/24
**relied [1]**
37/19
**reluctance [1]**
27/7
**rely [5]** 34/6
35/9 35/19
37/16 39/1
**relying [2]**
2/21 2/23
**remedy [1]**
23/20
**remember [1]**
18/18
**report [2]**
16/14 17/2
**Reporter [3]**
1/22 1/23 46/3
**reports [3]**
16/5 16/9
20/11
**representations**
**[2]** 38/25
41/9
**represented [2]**
3/15 20/25
**represents [1]**
41/8
**request [3]**

31/14 38/2
42/12
**require [2]**
44/22 45/1
**resided [1]**
21/21
**residence [27]**
3/5 4/7 4/9
4/12 4/21 5/2
5/3 5/4 5/9
7/20 7/25
15/18 15/25
16/1 17/12
17/24 18/17
20/25 21/6
22/2 22/8
22/15 22/18
23/23 24/18
26/20 34/3
**residents [1]**
6/2
**residing [3]**
21/11 21/13
21/16
**resolve [1]**
40/1
**respect [2]**
12/25 26/1
**respectfully**
**[1]** 39/11
**respects [1]**
24/6
**response [2]**
36/24 42/11
**restaurants [1]**
30/11
**returned [1]**
32/11
**reverse [1]**
44/12
**review [2]**
28/4 36/10
**reviewed [4]**
10/23 13/9
23/1 25/13
**rid [2]** 14/6
14/7
**riding [1]**
30/19
**right [10]**
9/13 11/15
19/16 26/10
29/16 35/16
38/4 41/11
41/23 44/11
**room [5]** 1/24
28/13 41/13
41/15 41/16

**rule [1]** 23/16
**ruled [1]** 19/1
**rules [1]** 41/2
**ruling [2]**
37/24 42/7
**rundown [1]**
19/6

**S**

**same [4]** 6/3
15/23 41/17
41/18
**sat [3]** 10/21
10/22 13/8
**saw [9]** 7/7
15/25 17/14
22/23 22/24
33/23 39/7
39/8 41/20
**Saxon [1]** 30/5
**saying [10]**
4/15 7/14
10/19 11/17
21/16 38/20
39/14 39/15
40/3 43/2
**Scott [1]** 32/3
**search [26]**
2/13 2/14 8/22
8/25 9/1 9/3
9/9 9/11 10/3
10/6 10/6 10/8
11/22 13/21
16/7 20/6 22/7
23/18 24/2
25/19 26/13
27/20 32/5
37/17 43/12
43/21
**searching [1]**
23/23
**second [1]** 3/2
**seeing [2]**
9/19 34/15
**seeking [3]**
2/22 21/11
24/19
**seem [2]** 11/19
12/19
**seemed [1]**
33/4
**seems [5]** 10/1
11/1 13/3
35/11 43/7
**sees [2]** 35/9
44/4
**send [1]** 6/7
**sense [1]**

**S**

**sense... [1]**
39/20
**sentence [4]**
3/2 3/3 4/24
4/25
**separate [2]**
12/3 13/6
**Sergeant [3]**
32/2 32/9
36/19
**served [2]**
26/2 30/10
**Services [1]**
44/24
**set [1]**   45/14
**several [3]**
24/6 27/25
28/3
**share [1]**
29/13
**shooting [27]**
3/10 3/12 3/12
3/16 4/1 4/4
4/10 5/12 5/17
5/23 6/25 9/12
11/4 13/13
13/19 13/24
14/9 14/21
14/22 14/24
15/9 20/6 22/5
22/23 25/4
25/6 25/19
**shot [2]**   44/5
44/13
**show [13]**   4/7
4/12 5/6 5/8
16/10 16/11
16/17 20/10
20/11 28/11
28/23 32/24
34/2
**showed [9]**
4/15 4/16 5/13
16/11 20/8
20/9 23/3 37/5
42/16
**showing [1]**
6/22
**shows [3]**   5/18
5/19 32/14
**sic [1]**   17/1
**sign [1]**   23/7
**signed [2]**
4/17 18/1
**significant [4]**
24/22 26/5

**sense** 1-4
33/1 33/2
**significantly
[1]**   8/4
**similar [1]**
25/14
**simply [1]**   7/4
**site [18]**   2/22
8/4 10/7 10/13
15/15 15/19
17/7 19/10
24/7 24/21
26/24 27/5
32/11 32/13
32/23 38/10
43/3 43/5
**sitting [2]**
23/4 31/1
**situation [3]**
39/23 40/1
43/16
**sleeping [1]**
28/13
**society [1]**
23/19
**solid [1]**   31/4
**somebody [1]**
7/9
**somebody's [2]**
23/22 26/8
**somehow [3]**
4/6 24/18
26/25
**someone [5]**
3/19 3/21 13/4
23/23 38/20
**someone's [3]**
4/8 12/15
26/19
**sometime [1]**
18/18
**sometimes [3]**
6/19 6/20 14/8
**somewhere [1]**
6/13
**sorry [3]**
17/13 19/15
45/9
**sort [2]**   2/19
30/21
**sound [1]**   4/14
**speaking [1]**
32/8
**specifically
[2]**   6/16 24/9
**spoke [2]**
18/11 18/17
**spoken [1]**
15/4

**stage [2]**   41/2
41/3
**standard [7]**
35/14 36/25
39/3 39/3
39/11 40/6
40/16
**standpoint [1]**
13/10
**starts [1]**
13/4
**state [1]**   2/4
**stated [1]**
22/9
**statement [23]**
2/16 2/17 4/1
4/13 7/21 7/23
17/6 17/17
18/22 20/7
22/11 22/13
22/14 24/14
35/5 35/18
35/20 35/20
38/5 39/12
40/5 40/6 40/7
**statements [3]**
34/12 35/15
39/5
**STATES [5]**   1/1
1/3 1/10 2/3
2/7
**staying [9]**
5/2 15/19
17/20 21/6
24/13 25/21
27/6 28/16
44/8
**step [1]**   3/10
**steps [1]**   45/4
**still [18]**
7/24 7/24 8/12
11/4 13/13
13/25 18/3
18/9 19/24
22/1 25/6
25/20 27/2
27/2 38/17
38/20 43/17
44/23
**stock [1]**
30/12
**stop [1]**   11/24
**Street [6]**
1/13 16/15
17/13 17/13
22/20 22/21
**STRmix [1]**
29/12

**struggling [1]**
27/23
**stuff [10]**
7/16 13/5
28/19 28/20
28/21 29/1
29/4 29/6
29/15 29/16
**subject [1]**
39/24
**subjective [1]**
37/11
**submitted [2]**
19/13 19/19
**Suboxone [4]**
28/3 28/3
29/23 30/23
**subparagraph
[1]**   10/15
**successfully
[1]**   30/8
**sufficient [3]**
23/18 37/23
42/15
**suggested [1]**
7/15
**suggesting [3]**
8/6 15/17 33/4
**suggestion [1]**
20/5
**suggests [2]**
7/24 27/7
**Suite [1]**   1/17
**superior [2]**
10/22 27/19
**supervised [1]**
30/13
**supervision [2]**
30/9 30/15
**supplemental
[1]**   16/14
**support [1]**
35/1
**suppress [1]**
2/15
**suppressed [5]**
26/16 27/9
28/10 31/4
42/15
**suppression [7]**
23/19 23/20
31/12 31/15
37/25 40/18
44/12
**Supreme [2]**
23/13 23/15
**sure [6]**   13/9
15/3 23/21

**surely [1]**
10/23
**surreply [2]**
16/10 16/13
**surveil [1]**
7/6
**surveillance
[3]**   15/25
19/11 32/10
**suspect [1]**
15/3
**suspected [1]**
23/24
**swear [1]**
12/10
**swears [1]**
32/5
**swore [1]**
12/19
**sworn [3]**   11/7
19/19 32/2

**T**

**talk [4]**   12/21
13/5 15/24
33/13
**talked [4]**
16/6 18/7 28/2
29/23
**talking [8]**
9/22 10/6
10/14 10/15
13/2 16/8 26/7
40/10
**talks [2]**
11/14 13/19
**tells [1]**
37/22
**tenure [1]**
11/11
**term [2]**   30/9
30/13
**terms [3]**   34/8
34/19 36/8
**tested [1]**
44/22
**testify [1]**
40/18
**testimony [1]**
2/12
**TEZIRA [2]**
1/16 2/9
**that hearing
[1]**   38/8
**there were [1]**
15/5

**surely** 44/22 45/4
45/19

**T**

**therefore [12]**
13/12 25/2
25/8 25/18
26/4 27/1 27/3
38/16 39/7
43/17 44/1
44/5

**thinking [8]**
4/17 32/19
33/14 33/19
34/7 34/19
34/21 35/19

**though [5]**
13/12 25/18
26/4 27/1
38/12

**thought [3]**
34/2 35/22
37/2

**three [8]**   5/13
7/7 16/2 16/3
17/15 20/7
41/4 42/8

**tie [1]**   7/2

**times [2]**
10/23 12/10

**today [4]**   3/14
30/21 31/1
31/7

**together [7]**
17/5 19/18
21/21 28/5
32/16 34/22
36/21

**told [4]**   15/1
15/2 15/5 32/8

**took [12]**   3/20
4/25 7/21 10/3
18/13 18/21
19/4 19/9
19/20 19/20
25/4 28/21

**top [1]**   18/19

**totally [3]**
11/2 24/6 43/1

**towards [1]**
38/22

**towers [2]**
5/15 5/17

**traced [2]**
15/8 15/13

**track [1]**   3/17

**traditionally
[1]**   40/25

**trafficking [2]**
11/21 20/4

**transcript [2]**
1/9 46/4

**trash [1]**
28/21

**treatment [2]**
44/23 44/25

**trial [3]**
27/10 27/12
45/14

**troubles [1]**
8/4

**true [5]**   3/3
3/16 7/17 37/3
46/4

**truth [3]**   38/6
40/12 40/15

**try [1]**   36/5

**trying [4]**
3/17 26/20
36/22 37/7

**two [10]**   5/15
5/17 13/6
14/23 16/5
17/14 20/4
20/5 29/11
31/5

**type [6]**   13/9
26/18 43/16
44/21 44/25
45/2

**U**

**U.S [1]**   1/23

**ultimately [2]**
23/15 27/21

**uncle [3]**
28/14 28/14
28/15

**under [3]**
10/14 13/21
44/10

**undercuts [1]**
7/25

**understandable
[1]**   33/5

**Unfortunately
[1]**   30/18

**UNITED [5]**   1/1
1/3 1/10 2/3
2/7

**unless [1]**
26/10

**unlikely [1]**
31/5

**unreasonable
[1]**   19/23

**untrue [1]**
17/6

**untruthfully
[1]**   37/4

**up [5]**   3/24
20/17 27/21
29/3 41/4

**upon [10]**   2/21
34/6 34/15
35/9 35/25
37/16 37/19
39/1 39/8
44/14

**USAO [1]**   1/13

**USAO-D.C [1]**
1/13

**use [4]**   2/25
11/20 14/7
44/21

**used [1]**   8/12

**using [2]**   4/20
44/23

**usually [2]**
14/5 41/4

**V**

**vacate [1]**
27/12

**value [1]**
17/23

**vicinity [4]**
6/14 17/9
24/11 24/13

**view [3]**   3/18
32/22 33/1

**viewed [1]**
13/10

**Virginia [24]**
7/18 7/20 10/4
13/25 17/25
18/14 19/6
20/20 21/1
21/1 21/2 21/2
21/4 21/13
21/18 21/18
21/20 21/20
21/21 22/18
23/6 24/18
25/5 28/6

**visual [1]**   3/1

**W**

**waived [1]**
40/23

**WALTON [1]**   1/9

**wants [3]**   2/18
31/15 44/18

**warehouse [2]**
30/8 30/10

**warrant [72]**

**warrants [8]**
10/23 11/23
12/11 12/13
13/9 18/22
25/13 32/6

**Washington [4]**
1/5 1/14 1/18
1/25

**way [9]**   4/6
4/16 5/6 7/14
13/15 24/25
27/5 37/6 40/9

**weapon [1]**
41/18

**week [6]**   14/6
18/10 19/14
19/15 31/12
33/13

**weird [1]**   41/2

**what's [9]**   6/5
8/2 31/18
33/15 33/22
34/25 36/1
37/23 39/6

**whatsoever [2]**
9/24 44/20

**who's [1]**   3/14

**whole [2]**   5/5
6/20

**whose [1]**
29/15

**why I [1]**
40/16

**wisdom [1]**
23/14

**within [4]**
6/12 6/14 23/2
23/3

**without [3]**
26/8 28/9 44/2

**witness [2]**
36/17 39/24

**witnesses [3]**
31/16 32/15
40/18

**Woodbridge [1]**
7/20

**words [8]**
31/24 32/21
32/22 33/19
36/2 36/6
37/18 39/9

**work [1]**   30/16

**worked [1]**
19/11

**working [3]**
30/4 30/5
30/10

**works [1]**
45/17

**worried [1]**
29/24

**wrong [2]**
42/21 44/3

**Y**

**year [1]**   30/18

**years [3]**
10/21 13/9
25/13

**yesterday [1]**
10/9